## WALKER–SMITH CO. v. JACKSON.
### No. 4956.

Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1938.

Rehearing Denied Jan. 23, 1939.

J. C. Darroch and E. M. Davis, both of Brownwood, and Girand & Girand, of Lubbock, for appellant.

Bradley & Wilson, of Lubbock, for appellee.

JACKSON, Chief Justice.

The appellee, John W. Jackson, instituted this suit in the District Court of Lubbock County against the appellant, Walker-Smith Company, a corporation, to recover the sum of $2,478, with interest, for certain pinto beans claimed by appellee to have been purchased from him by appellant.

The appellee alleges that he was in business at Mountainair, New Mexico, and, among other things, engaged in the purchase and sale of pinto beans; that appellant was engaged in the wholesale grocery business in Lubbock, Brownwood, Balinger, San Angelo, Abilene, Stamford and elsewhere in Texas, and Jeff Graham was engaged in the business of a common or contract carrier operating a fleet of motor trucks and transporting freight and merchandise for hire, and transported freight from Mountainair, New Mexico, to various places in Texas, where appellant maintained branch houses.

That about February 2, 1937, appellant purchased from appellee 910 sacks of pinto beans at $6.30 per sack, less the freight of 40¢ per sack, which was to be paid to Jeff Graham; that appellee, in accordance with the contract of sale and the instructions of appellant, on February 3d, delivered to appellant at Mountainair, New Mexico, by delivery to its agent, Jeff Graham, the first shipment of 350 sacks of pinto beans; charged them to appellant at $5.90 per sack, the price of $6.30 less the freight, and drew a draft on appellant through the First National Bank of Brownwood, Texas, for $2,065, the net value thereof after deducting the freight; that on February 5th, a second shipment of 280 sacks of beans was delivered to appellant, through Graham, at Mountainair, New Mexico, and on February 8th, a third shipment of 140 sacks were delivered, through the same agent, to appellant at Mountainair, New Mexico, under the terms of the contract. For the 280 sacks appellee drew his draft on appellant for $1,652, and for the 140 sacks he drew his draft for $826, which was less Graham's freight, according to the terms, provisions and conditions of the contract.

That he is ready, able and willing to deliver the remaining 140 sacks at the agreed price upon receipt of payment for the beans already delivered.

The appellant answered by general demurrer, general denial, denied under oath that Jeff Graham was its agent, alleging that it had not purchased the beans from appellee but had bought them from Jeff Graham, who advised it that the appellee refused to deliver the beans to him unless paid for as loaded at Mountainair; that appellant declined to do this but advised Graham that it would pay appellee direct upon delivery of the beans at its various places of business in Texas, and thereupon wired the appellee to that effect, and alleges that it paid all drafts for beans actually delivered.

The case was tried before the court without the intervention of a jury and judgment rendered for appellee for the sum of $2,478, which with interest at the time of the judgment aggregated $2,591.57, and upon said sum interest was allowed from the date thereof, and appellant prosecutes this appeal.

The record shows that about February 1, 1937, appellant desired to purchase some pinto beans for use at its branch houses in Texas; that its buyer, Mr. James Beadel, got in touch with Jeff Graham, advised him what appellant wanted, and learned that appellee of Mountainair, New Mexico, had pinto beans for sale, and the price at which they could be obtained, but informed Beadel that he would not deliver them to Graham without the cash. After some telephone conversations between appellee and Graham and some communications between the appellant and Graham, appellee agreed that if appellant would pay for the beans as they were loaded he would sell them.

On February 2d, Jeff Graham sent the following wire to appellant:

"Walker Smith Company Brownwood Texas Wire By Western Union John Jackson Mountainair New Mexico That It Is Satisfactory For Him Draw Draft On You As We Pick Up Pintos Will See Personally That Beans Are O K Before Loading On Truck Leaving For There Tonight."

In response to this telegram, appellant on the same day wired appellee as follows:

"John Jackson Mountainair New Mexico We Will Honor Your Draft For Nine

Hundred Ten Sacks Pintos To Be Picked Up By Jeff Graham At Six Thirty Less Grahams Freight Or Six Thirty Delivered Draft To Be Made As Graham Picks Up Beans And Paid Upon Delivery Of Beans Stop Make Draft Through First National Bank Brownwood."

On February 3d, appellee delivered to Jeff Graham at Mountainair, New Mexico, a shipment of 350 sacks of pinto beans and his draft for the price thereof, less freight, was drawn upon and paid by appellant when it received the beans. On February 5th, appellee delivered to Jeff Graham at Mountainair, New Mexico, a second shipment of 280 sacks of pinto beans for which he drew his draft, the part of which material to this suit is as follows:

"The First National Bank of Belen,
" Belen, New Mexico, February 5, 1937.

"Arrival 280 sacks of beans via Jeff Graham's trucks, pay to the order of John W. Jackson, Mountainair, New Mexico, $1652.00 (Sixteen Hundred Fifty-two and No/100 Dollars) With Exchange.

"Jno. W. Jackson

"To Walker-Smith Company, Brownwood, Texas

"The First National Bank of Brownwood, Texas."

The record shows that on February 8th the appellee delivered a third shipment of 140 sacks of pinto beans to Jeff Graham and drew a draft upon appellant, which, except for the date and amount, is identical with the draft set out above; that payment of these two drafts was refused because Graham did not deliver the 420 sacks of beans covered by these two drafts to appellant.

The court found, among other things, that appellant was indebted to appellee for these 420 sacks of pinto beans at $5.90 per sack, which were delivered to Graham at Mountainair, New Mexico, in the second and third shipments.

The telegram from appellant did not inform appellee of the destination to which the beans were to be transported and Mr. Beadel, the purchasing agent of appellant, testified that appellee was not informed and not concerned with the point at which the beans were to be delivered in Texas; that Jeff Graham had been instructed to go to Mountainair, New Mexico, and pick up the beans and transport them to certain towns in Texas, for which appellant would pay him 40¢ per sack as freight.

Jeff Graham was engaged in the trucking business for himself and transporting freight for others for hire from places in Texas and New Mexico to different points in Texas.

The appellant contends that the court erred in refusing to sustain its general demurrer to appellee's petition because the averment that Jeff Graham was the agent of appellant was but a conclusion of the pleader and stated no facts which would show such agency.

In addition to the allegations in appellant's petition which we have stated, the telegram from appellant to appellee heretofore quoted was pleaded in haec verba and the effect of the telegram stated. The court did not, we think, commit error in refusing to sustain the general demurrer.

The appellant assails as error the action of the court in rendering judgment against it because appellee's cause of action was based on the allegation that Jeff Graham was the agent of appellant and having so alleged he was not entitled to recover because the testimony wholly failed to show such agency.

The testimony warrants the conclusion that appellant instructed Graham to go to Mountainair, New Mexico, receive the beans from appellee after inspection, and transport them to such points in Texas as appellant directed.

The telegram from Graham set out above, in effect, requested appellant to wire appellee at Mountainair that it would honor his draft for 910 sacks of beans to be picked up by Graham, stating he was leaving for Mountainair that night and would see that the beans were in good condition before he loaded them. In compliance with this request, appellant wired appellee, in substance, that it would honor his draft for 910 sacks of beans to be picked up by Jeff Graham at Mountainair, the draft to be for $6.30 per sack, less Graham's freight, and to be made on the First National Bank of Brownwood for the price of the beans as delivered. Mr. Graham operated a fleet of trucks and transported freight for hire for anyone who desired his services. The first shipment was delivered by him to appellant in Texas and the draft therefor paid.

In our opinion, the evidence, while controverted in some particulars, was amply sufficient to authorize the court to find as he did by implication that Graham

was the agent of appellant to receive and transport the beans. Thompson v. Schmitt et al., 115 Tex. 53, 274 S.W. 554; 2 Tex. Jur. 384, para. 5.

The appellant challenges as error the action of the court in rendering judgment against it, asserting that the telegram relied on as a contract of sale provides that the drafts of appellee are not to be paid unless the beans are delivered at its branch houses in Texas. It is to be remembered that appellee was not advised of the destination of the beans. 55 C.J. 329, para. 319.

This requires us to consider whether at the time the beans were delivered to Graham at Mountainair, New Mexico, the title thereto remained in appellee or passed to appellant. Delivery may be actual or constructive.

"Actual delivery consists in giving to the buyer or his servants or accredited agent the real possession of the goods sold." 55 C.J. 361, para. 351.

"While the word 'delivered' as used in sale contracts, usually imports a delivery to the buyer, this does not necessarily mean that the goods must always be delivered to the buyer in person; on the contrary, a delivery to an authorized agent of the buyer, such as a common carrier, may be sufficient." 37 Tex.Jur. 374, para. 166.

See, also, Burton & Beard v. Nacogdoches Crate & Lumber Co., Tex.Civ. App., 161 S.W. 25; Ehrenberg et al. v. Guerrero, Tex.Civ.App., 225 S.W. 86.

"A delivery by direction of the buyer to a third person as intermediary to ship the goods is a good delivery to the buyer." 55 C.J. 370, para. 365.

"As a general rule, in the absence of a contrary agreement, the seller is not bound to send or carry the goods to the buyer, but he fulfills his obligation by leaving or placing them at the buyer's disposal so that he may remove them without lawful obstruction, * * *. But the goods must be so placed that the buyer has access to them for the purpose of taking possession." 55 C.J. 364, para. 358.

Under the testimony, we think that Jeff Graham was a carrier. Burnett v. Riter, Tex.Civ.App., 276 S.W. 347.

In Alexander et al. v. Heidenheimer et al., Tex.Com.App., 221 S.W. 942, it is said [page 943]: "It is an established rule of law that when property is delivered to a carrier by the vendor, as directed by the vendee, or where the contract is silent as to the place of delivery, delivery to the carrier operates as a delivery to the vendee and passes title to him; and, if the property at the time of such delivery is in the condition as to quality which the vendee is entitled to receive, this will constitute a performance of the agreement of sale; and any loss of the property thereafter will fall, not upon the vendor, but upon the vendee."

It is true appellee stated the drafts drawn by him on appellant were to be paid on "arrival * * * of beans via Jeff Graham's truck," but this does not necessarily mean that the drafts are to be paid only on the delivery of the beans to appellant in person or at its place of business in Texas, but may be considered as fixing the time of payment.

"It has been held that the fact that the goods are to be paid for on arrival will not prevent the title from passing on delivery to the carrier if such is the intention of the parties, as this will be considered merely as fixing the time of payment or credit." 24 R.C.L. 42, para. 305.

The question under this record was an issue to be determined by the court and we are not warranted in disturbing his conclusion, and this contention is overruled. 55 C.J. 335, para. 326.

Appellant's assignment urging as error the action of the court in permitting appellee to testify to certain transactions between him and Graham for the purpose of establishing agency is overruled. Since the case was tried before the court, the presumption is that inadmissible testimony was not considered in reaching a conclusion, and agency, we think, was established by other testimony to the admission of which no objection was urged.

The assignments complaining of the action of the court in not making a finding on the question of agency in his findings of fact and in refusing defendant's request for additional findings, do not present reversible error. The court impliedly found that Graham was the agent of appellant. There is a complete statement of facts in the record and appellant has failed to show that any harm resulted to it by the failure to make an express finding on agency or the refusal to make additional findings, as requested.

The judgment is affirmed.