David Floyd CONAWAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1166–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

Bill Frizzell, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty. and Jim E. Crouch, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty. and Julie B. Pollock, Asst. State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

David Floyd Conaway, hereinafter appellant, was charged by indictment with delivering a controlled substance, to-wit: marihuana, to Danny Green, a Department of Public Safety undercover narcotics officer. It was alleged in pertinent part that the

appellant "did then and there knowingly and intentionally deliver to DANNY GREEN, *by actual transfer,* more than one-fourth ounce of Marihuana." (Our emphasis.) The jury found appellant guilty and also assessed his punishment at seven years' confinement in the Department of Corrections. The Tyler Court of Appeals, in an unpublished per curiam opinion, affirmed, see *Conaway v. State,* (Tyler Court of Appeals number 12–83–0072–CR, September 27, 1984), rejecting the appellant's contention that the evidence was insufficient to support the indictment's allegation that he *actually transferred* the marihuana to Green.

We granted the appellant's petition for discretionary review in order to make the determination whether the holding by the court of appeals correctly decided the issue. We find the holding erroneous and reverse.

The trial judge, in his charge to the jury on guilt, to which no objections were made by the appellant, nor were any special requested instructions submitted by either side, defined the word "deliver" in the abstract as follows: "The term 'deliver', as used herein, means the actual transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Notwithstanding that the indictment charged the appellant with making an actual delivery, the trial court's application paragraph in the charge did not expressly include that term: "Now if you find from the evidence beyond a reasonable doubt that on or about the 11th day of August, 1980, in Smith County, Texas, the Defendant, DAVID FLOYD CONAWAY, did intentionally or knowingly deliver a controlled substance, to-wit: Marihuana of more than one-fourth (¼) ounce, to DANNY GREEN, as alleged in the indictment, then you will find the Defendant guilty as charged." The jury was not instructed on the law of parties. The jury found appellant guilty "as charged in the Indictment."

The prosecuting attorney in his opening statement to the jury advised the jury, inter alia, that the State would prove that on the date in question Green purchased marihuana *from the appellant.* The pros-

ecuting attorney did not at that time allude or refer to any third persons that might have been involved in the delivery of the marihuana.

The facts are rather simple. Green testified that while working as an undercover officer in Smith County, "making himself available to the drug element in an attempt to locate and find people that are involved in the illicit sale of narcotics, and make purchases from them," he came into contact with the appellant. On the date in question, he was working the South Lyons Street area of Tyler. Green testified that while situated in the residence of Randy Wingard, located at 304 South Lyons Street, he came into contact for the first time ever with appellant. Kenneth Williams, who appears to have put the meeting together, was also present. Appellant drove alone to the Wingard residence in his vehicle. After entering the residence, appellant handed a paper sack to Wingard, who handed it to Green, who saw that the sack contained four plastic sandwich bags containing what to him appeared to be marihuana. Expert testimony later revealed it was in fact marihuana. Green agreed to purchase two bags at $35 for each bag, and gave the appellant $70 for the two bags. The appellant set the price of $35 for each bag. The appellant then received the sack from either Green, Williams, or Wingard, or he just picked up the sack, which contained the remaining two bags, off a table. He then left the residence. The date of the offense was August 2, 1980. The appellant, however, was not arrested until October 28, 1982. Neither Williams nor Wingard testified at the appellant's trial.

The appellant testified and denied that he was present in the Wingard residence at the time in question, "I don't know anybody that lives on Lyons Street. I don't even know where Lyons Street is at."

In rejecting appellant's contention that there was a variance between the allegation of "actual delivery", as alleged in the indictment, and the evidence adduced to support that allegation, after setting out a summary of the facts of the case, the court

of appeals merely concluded: "We hold that the evidence was sufficient for the jury to find that appellant delivered the marihuana *by actual transfer*." (Our emphasis.)

The State argues that in deciding whether there was an actual delivery of the marihuana by appellant to Green, we should look to the "character of the transaction." We have done so but find such does not assist the State in establishing that appellant "actually" delivered the marihuana to Green.

Under the Controlled Substances Act, a person commits an offense if he knowingly or intentionally delivers marihuana to another. Art. 4476–15, § 4.05. "Deliver" or "delivery" may occur either by actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Art. 4476–15, Section 1.02(8), V.A.C.S. Thus, in this case, technically speaking, there were two actual deliveries that took place; the first one occurred when the appellant delivered the paper sack to Wingard and the second occurred when Wingard delivered the paper sack to Green. Based upon the evidence, it is clear that the appellant never actually delivered any marihuana to Green. Cf. *Garza v. State*, 622 S.W.2d 85 (Tex.Cr. App.1981) (On State's motion for rehearing.)

Under the Controlled Substances Act, delivery of a controlled substance might be accomplished in three distinct ways: actual transfer, constructive transfer, and offer to sell. See *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App.1980). Also see Art. 4476–15, Section 1.02(8), supra. As a matter of law, these are mutually exclusive ways in which delivery of a controlled substance might occur.

In this instance, the State chose to charge appellant only with actually delivering the marihuana to Green, thus satisfying the specificity requirement that *Ferguson*, supra, which held that an indictment which does not specify which kind of delivery was committed is subject to a motion to quash, mandated. Thus, notwithstanding that the State could have alleged both actu-

al *and* constructive delivery, see *Queen v. State*, 662 S.W.2d 338, 341 (Tex.Cr.App. 1983), it chose only to allege that the delivery occurred by "actual delivery." It was thus bound to prove its allegation beyond a reasonable doubt. The evidence clearly reflects that a constructive delivery from appellant to Green occurred, see *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App.1981); *Gonzalez v. State*, 588 S.W.2d 574 (Tex.Cr. App.1979), and *Rassmussen v. State*, 608 S.W.2d 205 (Tex.Cr.App.1980), in that the transfer of the marihuana from Wingard to Green did not occur by actual delivery from appellant but only occurred at the instance or direction of the appellant.

The State argues: "Where a transferor intentionally and knowingly seeks to immediately transfer possession of the property to a transferee but out of necessity or ease of transport must go through a third person, such transaction could be deemed to be an 'actual' transfer." The State cites us to no authority that might support its proposition, and we have found none. We find that the main flaw in the State's argument is that there is no evidence in this record that might warrant the inference that it was necessary for the appellant to actually deliver the marihuana to Wingard before it was delivered to Green, nor is there any evidence in this record from which we might infer that the delivery to Wingard was done merely to facilitate the transaction.

Although appellant was charged individually with actually delivering a controlled substance, the proof only shows that there was a constructive delivery. Nevertheless, appellant was subject to being convicted of actual delivery of the substance, provided that the law of parties is invoked and applied to the case. See V.T. C.A., Penal Code, Sections 7.01 and 7.02. Also see *Pitts v. State*, 569 S.W.2d 898 (Tex.Cr.App.1978), and its progeny. However, in this cause, the jury was not instructed on the law of parties. Thus, the trier of fact was not permitted to find appellant guilty of actual delivery acting as a party to the offense. Cf. *Medellin v. State*, 617 S.W.2d 229 (Tex.Cr.App.1981);

*Westfall v. State,* 663 S.W.2d 664 (Tex.App. —Corpus Christi 1984) (No P.D.R.); *Howery v. State,* 528 S.W.2d 230 (Tex.Cr.App. 1975); *Hammonds v. State,* 316 S.W.2d 423 (Tex.Cr.App.1958); *Robinson v. State,* 493 S.W.2d 145 (Tex.Cr.App.1973).

The evidence adduced in this cause established that Green, while performing an undercover narcotics investigation, came into contact with Wingard and Williams. The three later met at Wingard's residence. The record does not reflect, other than Green's hearsay statement, that "It was prearranged that [the appellant] would bring marihuana to the residence", how appellant got into the picture. Nevertheless, appellant later arrived at the residence with a paper sack that was shown to contain four baggies of marihuana. He gave the sack to Wingard who gave it to Green. Wingard told Green the price per bag was $40, but Green told him that he could purchase it for $35 per each baggie. "At this time [appellant] agreed to the price," and Green gave appellant $70 for two of the baggies of marihuana. Appellant then took the paper sack with the two remaining baggies and left the residence.

■ The term "actual delivery" is not defined in the Controlled Substances Act. Therefore, we must apply its ordinary, commonly understood meaning. One of the definitions for the word "actual" is "existing in fact or reality." One of the definitions for the word "delivery" is the act of delivering, or something delivered. "Deliver" is defined to mean "to take and hand over." *Webster's Ninth New Collegiate Dictionary* (1985 edition). Thus, for our purposes, "actual delivery" consists in completely transferring the real possession and control of a controlled substance from one person to another person. In this instance, there is no question that appellant made an actual delivery to Wingard. However, there is also no question that he did not make an actual delivery of the marihuana to Green, as charged in the indictment. The fact that he might have brought the marihuana to the residence, participated in reducing its price per baggie, and then left with the remaining marihuana and the $70 does not convert what is "constructive delivery" to "actual delivery," nor does it convert appellant from being a party to the offense to being the only participant in the offense.

We again point out that the law of parties was neither invoked nor applied in this cause.

The evidence is clearly insufficient to support appellant's conviction for actual delivery of the marihuana to Green.

Finding that the evidence is insufficient to sustain the conviction, we reverse the judgment of the court of appeals, remand the cause to the trial court where a judgment of acquittal will be entered on behalf of the appellant.

MILLER, CAMPBELL and WHITE, JJ., concur in the result.

ONION, P.J., not participating.

CLINTON, Judge, concurring.

In every case but one reviewed by Judge McCormick in his dissenting opinion the decision of the Court was unanimous on the point presently under investigation here.[1] Given that sort collegiality in opinion after opinion, that the Court was wreaking "chaos" seems to have gone unnoticed by

1. Not mentioned is *Ferguson v. State,* 622 S.W.2d 846 (Tex.Cr.App.1980). It involved an exception for want of adequate notice sufficient to prepare a defense to allegations in a charging instrument that accused did "intentionally and knowingly deliver to Jerry Powell, a controlled substance namely Heroin." Because "[d]elivery of a controlled substance may be accomplished in at least three quite different situations: actual transfer, constructive transfer and the entirely to distinct offer to sell," both a Court panel, *id.,* at 848, and the Court on rehearing, *id.,* at 850, found the exception should have been sustained in that constitutionally an accused is entitled have the State provide the legal theory of just which kind of delivery it intended to establish by proof. The Court expressly noted:

"Here, however, 'delivery' is the very heart of the offense. Which type of 'delivery' the State will attempt to prove would be critical to the appellant's defense. The 'delivery' is the *act* by the appellant *which constitutes the criminal conduct."*

*Ibid.* (All emphasis is mine throughout unless otherwise noted.)

Judges usually extraordinarily alert to slightest miscue.[2]

In my judgment another review of many of the same cases will demonstrate that scriveners drawing charging instruments and courts submitting jury charges without strict attention to state of evidence probably created what Judge McCormick interprets as "chaos."

Certainly, the indictment was the problem in *Gonzalez v. State*, 588 S.W.2d 574 (Tex.Cr.App.1979), then regarded as a matter of first impression in this jurisdiction. It alleged accused delivered heroin to a named peace officer. However, accused transferred heroin to one person who subsequently out of sight of accused handed it to named peace officer whose presence was utterly unknown to accused. As Judge Dally remarked in his concurring opinion, the testimony would have supported a conviction of appellant either for possession of heroin or delivery of heroin to the middleman, "but the appellant was not charged with these offenses." *Id.*, at 578.

In *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Cr.App.1980), while the opinion does not set out indictment allegations, judging from charge given by the trial court it alleged simply that accused did "knowingly and intentionally deliver to [named undercover officer] marijuana in a quantity greater than one-fourth of an ounce." *Id.*, at 207. The proof would show, however, that in his presence the brother of accused actually transferred a sample to the officer. A Court panel found no support for a theory that accused was "the primary actor," and reversed for failing in the court's charge to apply law of parties to facts and refusing a requested instruction that would have. *Id.*, at 207–208. On rehearing the State asserted that accused was "a primary actor in the commission of this offense" in that he "constructively delivered" the marihuana. Rejecting that contention for reasons outlined by Judge McCormick in his

dissenting opinion at page 699, the Court unanimously denied State's motion.

Next, as Judge McCormick points out, *Garza v. State*, 622 S.W.2d 85 (Tex.Cr.App. 1981), is straightforward actual transfer to an undercover agent, while *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App.1981), is a probation revocation on account of two sequential constructive transfers to an undercover agent in which the probationer was clearly the transferor under the rule of *Gonzalez*, supra.

As pointed out *ante* in n. 1, the indictment in *Queen v. State*, supra, awkwardly attempted to set out factually both actual and constructive transfer, the content of which is quoted by Judge McCormick in his dissenting opinion at page 700. Delivery of marihuana to a named undercover agent was alleged, but then the pleader tried to state the manner and means: one, "by transferring the marihuana into a motor vehicle within the care and control and custody of said [agent];" the other, "by transferring the said marihuana to the actual custody of the said [agent]." 662 S.W.2d at 340. The issue over which the Court split was whether those allegations gave sufficient notice of the type of delivery upon which the State would rely. For our purposes here, however, competing interpretations of such peculiar allegations become academic in light of evidence which clearly shows that accused personally dealt directly with the agent in making two deliveries of marihuana. First, in a motel room he handed the agent a leather bag containing four pounds of marihuana as part of a one hundred pound transaction; after the agent inspected and approved its quality, he gave accused the keys to his van, and accused drove it to another place, loaded the balance of the total amount, returned to the motel parking lot and handed over keys to the agent. Thus, while the indictment allegations may have been somewhat garbled as a matter of notice, the evidence

---

**2.** The Court sharply divided in *Queen v. State*, 662 S.W.2d 338 (Tex.Cr.App.1983), over intendment and sufficiency of notice from unusual factual allegations that the majority construed to aver both actual and constructive transfer, *id.*, at 341; whereas dissenters charged the majority with confusing "actual versus constructive transfer with transfer to actual or constructive custody of the recipient," *id.*, at 342. Judge McCormick seems to be reopening that dispute. Dissenting opinion, at pp. 701–702.

plainly shows conduct of accused constitutes an actual transfer followed by a constructive transfer.

In *Davila v. State*, 664 S.W.2d 722 (Tex. Cr.App.1984), the Court followed the earlier interpretation of one aspect of constructive transfer in *Rasmussen*, supra, and found accused did not constructively transfer four balloons containing heroin to an undercover officer because she was not shown to have had control of it before another person manually transferred the balloons to the officer or that the latter made the transfer at her instance or direction. *Id.*, at 724. This is just another example of faulty pleading in the face of available evidence showing who actually delivered the controlled substance.

Thus, the "difficulty" perceived by Judge McCormick does not arise from our prior decisions but from a lack of comprehension of meaning of the terms "actual transfer" and "constructive transfer" on the part of some who draft charging instruments and prepare charges. In the instant cause the pleader chose to allege delivery "by actual transfer," and after the evidence was in neither the prosecutor nor the trial judge saw to it that the charge to the jury included instructions on the law of parties. If it equates with reversal, that is what caused "difficulty" here. Compare *Pulgarin v. State*, 635 S.W.2d 195 (Tex.App.—Houston [1st] 1982), no PDR.

Judge McCormick criticizes the majority opinion and prior decisions identifying "actual transfer," claiming such construction "unduly restricts the clear intent of the statute and totally disregards [the phrase] 'whether or not there is an agency relationship.'" Dissenting opinion, at p. 701.

Taking the latter criticism first, in terms the phrase is in the nature of a proviso. It is used in context of a "transfer from one person to another...." Thus it is a declaration that *as between those two persons* an agency relationship is of no moment in determining whether an alleged transfer from one to the other occurred. Stated another way, that there is an agency relation between them will not bar a finding that a transfer took place. One sure effect of tacking that phrase on the definition is to defeat a former defense of accommodation agent. See *Posey v. State*, 515 S.W.2d 286 (Tex.Cr.App.1974) (Morrison, J., concurring in part and dissenting in part, at 288).

As to legislative intent, the genesis of this definition is the Uniform Controlled Substances Act of 1970. See 9 U.L.A. 195 (Master Ed. 1979). Given that source, one may comfortably believe that to have a definition as uniform as reasonably possible the commissioners drew on commonly understood meanings of delivery of goods by actual and constructive transfer, as terms of art. Accordingly, we may resort to the great body of precedent in law merchant or mercantile law as a fair analogue to controlled substance transactions (with or without consideration).

When used in the law of sales of goods, an actual transfer means a manual transfer; that is, a passing or handing over an article from one person to another. Black's Law Dictionary (Revised Fourth Edition) 1669.[3]

> "Actual delivery consists of the giving *real possession* to the vendee or his servants or special agents who are identified with him in law and represent him. [citations omitted throughout]. It is a formal *immediate tradition* of the property to the vendee. It contemplates a *manual transfer* of the property."

Id., at 515. See *Davis v. State*, 631 S.W.2d 587, 589 (Tex.App.—El Paso 1982) no writ history; *Walker-Smith Co. v. Jackson*, 123 S.W.2d 993, 996 (Tex.Civ.App.—Amarillo 1938), writ dism'd judgment cor.

Constructive delivery, on the other hand, is essentially a general legal term "comprehending all those acts which, although not truly conferring a real possession of the thing sold on the vendee, have been held, by construction of law, equivalent to acts of real delivery." Black's Law Dictionary, supra, at 515. Accord: *Fox v. Young*, 91

---

**3.** Common usage of the term conveys a like meaning. Webster's New International Dictionary (Second Edition), G. & C. Merriam Company (Springfield 1944) 2689. 7. *Law*; Webster's New Collegiate Dictionary, G. & C. Merriam Company (Springfield 1979) 1231.

S.W.2d 857, 859 (Tex.Civ.App.—El Paso 1936) no writ history, citing 12 C.J. 1303.[4]

Those meanings, understandings and usages of actual and constructive transfers constituting a delivery, while originating in law merchant, are equally applicable to transfers amounting to a delivery within the meaning of § 1.02(8). Justice Earl W. Smith has delineated them and appropriately applied the concept of constructive transfers for the Austin Court of Appeals in *Daniels v. State*, 674 S.W.2d 388 (Tex.App.—Austin 1984) no PDR. The Houston courts of appeals, following *Rasmussen*, do not indicate any "difficulty" in distinguishing "actual" and "constructive" transfers. See, e.g., *Henderson v. State*, 681 S.W.2d 173 (Tex.App.—Houston [14th] 1985), and *Pulgarin v. State*, supra.

The dissenting opinion suggests at page 8 that the proper approach is "to look only to the type of possession resulting in the transferee and determine whether it is an actual or constructive transfer." However, that viewing is especially myopic. As pointed out in *Ferguson v. State*, supra, "The 'delivery' is *the act by the appellant* which constitutes the criminal conduct." 622 S.W.2d, at 850. The suggested test is so foreign to existing precedent that it can only serve to unsettle our prior decisions. Indeed, the dissent does not even attempt to take the very analytical approach to the facts of this cause it insists the Court should make.

Again, because of the way in which the indictment alleged appellant committed the offense, the case was tried and the jury was charged on the theory that by an actual transfer appellant delivered marihuana to undercover officer Danny Green, but the proof showed appellant manually transferred the bag of marihuana to Randy Wingard. Then and there appellant committed the offense of delivery of marihuana by actual transfer to Wingard. The "difficulty" is, as Judge Dally demonstrated in *Gonzalez*, supra, appellant was not charged with that offense.[5]

The State Prosecuting Attorney argues that the "popcorn vendor" analogy urged upon the jury in *Gonzalez v. State*, 588 S.W.2d 574 (Tex.Cr.App.1979) is apt here.[6] But heroin or any controlled substance is not popcorn, and an unlawful transfer of marihuana requires only a transferor and a transferee, who need not be a "buyer" to be a felony of the third degree. And in this cause Wingard was not an innocent football fan. He knew the bag contained marihuana and intentionally handed it to Green, asking him to "look at them." Wingard made an actual manual transfer. The "popcorn vendor" analogy is false.

With those observations I join the judgment of the Court.

DUNCAN, J. joins in this opinion.

McCORMICK, Judge, dissenting.

Because the majority erroneously restricts the definition of the term "actual

---

**4.** In *Fox v. Young*, supra, one Handy had purchased a doughnut machine with cash payment and a promissory note secured by chattel mortgage; he placed it in a certain cafe. Later with note in default and demand made on him by noteholder for the machine, Handy wrote the latter to "herewith tender and do deliver to you possession [of the machine.]" Though the machine remained in cafe, the El Paso Court held it had been constructively delivered to noteholder, so that a seizure of it by sheriff under writ of sequestration at instance of another creditor constituted conversion. Handy had done everything necessary to be done "in order to put the [machine] completely and unconditionally at the disposal of the [mortgagee]." *Id.,* at 859.

**5.** Wingard committed an offense also when he manually transferred the bag of marihuana to Green. We do not know from this record

whether Wingard was ever charged, but certainly he was vulnerable to one. As a matter of fact, under properly pleaded indictments the evidence would be sufficient for the State to secure two convictions instead of botching this one.

**6.** "At a football game when a vendor comes up the stairs with popcorn and the man on the end wants to buy a bag of popcorn, the vendor down on this end gives it to this person and she gives it to the next and on and on in turn until it get down to the end. The popcorn is passed from here to here to here until it eventually gets down to the buyer. It may go through some other hands, but this is the buyer and this is the seller. .... Now, the buyer now has his popcorn and the seller now has his money. That is what we mean by constructive delivery."

delivery" as contained in the Controlled Substances Act (Article 4476-15, Section 1.02(8), V.A.C.S.),[1] I must register my dissent. Under the facts presented in this case, and as set forth in the majority opinion, the State correctly indicted appellant for actual delivery, and the appellant was correctly convicted since the evidence was clearly sufficient to support the conviction.

Today's opinion restricts the term "actual delivery" to but one simple transaction, and thus, by implication, makes all other "deliveries" "constructive deliveries." Hereafter, for a defendant to be convicted of "actual delivery" the evidence must show that the defendant personally and manually possessed the contraband and that he physically handed the contraband directly to the transferee and that the transferee personally, manually and physically received the contraband. Such is a distortion of the terms actual delivery and constructive delivery and ignores the plain terms of the statute.

Article 4476-15, supra, defines "deliver" or "delivery" as "the actual or constructive transfer from one person to another of a controlled substance ... whether or not there is an agency relationship." Since the Legislature did not define "actual" or "constructive" transfer, this Court has continued to wrestle with the interpretation of those terms. Such an affray is, in my opinion, an unnecessary exercise which has brought us to the absurd result demonstrated by today's majority opinion.

The history of this Court's interpretation of the applicable section shows that we have gotten on the wrong road, and followed it further and further away from our proper destination. A complete review of decisions of this Court on the subject is informative.

In *Gonzalez v. State*, 588 S.W.2d 574 (Tex.Cr.App.1979), the defendant was convicted of knowingly and intentionally delivering heroin. A panel of this Court reversed the conviction and, on the basis of unassigned error, held that the evidence was insufficient to show the defendant's guilt. The facts showed that the defendant delivered the contraband to one Montoya who, after obtaining possession of the heroin, returned to the parked car from defendant's house and handed the heroin to Galvan, the person alleged in the indictment as the transferee. There was no evidence that the defendant even knew of the existence of Galvan, nor was there any evidence showing defendant intended any type of transfer to Galvan. It was held that a "transfer" as an essential element of "deliver" contemplates that the transferor (Gonzalez) is at least aware of the existence of an ultimate transferee (Galvan) before he may be said to have delivered or made a delivery of a controlled substance to another through a third person (Montoya). *Gonzalez v. State*, supra, at 577.

Later, in *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Cr.App.1980), this Court examined the term "constructive transfer." Rasmussen was charged and convicted of the offense of delivery of marihuana. The evidence revealed that undercover officer Fife arranged a meeting with the defendant's brother, and that the defendant arrived at the scene driving the automobile in which his brother was a back seat passenger. Defendant's brother gave Fife a baggie of marihuana, which Fife offered to pay for, but the brother refused payment. When a police car was observed near the meeting place, the defendant said, "Let's get out of here," and "We'll get back with you," referring to a discussion of future purchases by Fife.

On appeal, the State argued that Rasmussen had been guilty of a constructive transfer. Noting that the term "deliver" was apparently derived from the Uniform Controlled Substances Act, the Court went on to examine cases from other jurisdictions which had dealt with the meaning of the term constructive transfer. Citing *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977), the Court quoted:

> "*We interpret a 'constructive transfer' to be the transfer of a controlled substance either belonging to an individual or under his control by some*

1. See now Article 4476-15, Section 1.02(6), V.A. C.S.

*other person or agency at the instance or direction of the individual accused of such constructive transfer."* (Emphasis added).

After examining both a Nebraska and a New Mexico case, the Court concluded:

"The common element of these cases is that prior to delivery the substance involved was directly or indirectly under the defendant's control. In the instant case appellant exercised no direct control over the marihuana such as would indicate that it belonged to him, nor does the evidence reflect that (defendant's brother) was acting as appellant's agent or under his direction." *Rasmussen*, supra, at 210.

The facts of *Garza v. State*, 622 S.W.2d 85 (Tex.Cr.App.1981), demonstrate a simple actual transfer. An undercover narcotics agent, posing as a heroin buyer, met with the defendant Garza on a motel parking lot. Following a discussion, the defendant left the officer and entered the motel, returning a short time later with a small package of heroin which he gave to the officer. Such evidence was sufficient to support conviction for the "actual transfer" of heroin as proscribed by the statutes. *Garza*, supra, at 90.

Again in 1981, this Court had an opportunity to discuss the theory of constructive transfer. In *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App.1981), the Court applied the holding of *Gonzalez*, supra, to sustain the revocation of Sheffield's probation. The facts in the revocation hearing showed that undercover officer Delgado accompanied Martha Coleman to the defendant's place of business for the purpose of purchasing drugs. Sheffield met them at their car where Coleman asked the defendant for four preludin pills. At the same time Delgado handed Coleman $30.00 which she owed the defendant from a previous transaction, and Coleman gave this money to Sheffield. Coleman then accompanied the defendant into his place of business where he got a bottle of pills from behind the counter, handed Coleman four of them, and told Coleman he did not want to deal with Delgado. He then instructed Coleman that when she got the money for the pills to give it to "Mary Jo." Coleman returned to the car, gave the pills to Delgado, received $60.00 from him, and attempted to hand the money to the defendant. The defendant instructed "Mary Jo" to take the money, which she did. She in turn handed the money to the defendant, who put it in his pocket.

Later that same day a similar transaction took place. Delgado and Coleman returned to the defendant's business, and when he walked out to the car Coleman told him she wanted some more pills. She then turned to Delgado and asked him how many pills he wanted and Delgado told her he wanted four, which message was relayed to the defendant. The defendant then entered his place of business, turned and handed something to "Mary Jo" who then handed Coleman four pills. Coleman handed the pills to Delgado, received $60.00 from him and handed the money to "Mary Jo" at defendant's direction. "Mary Jo" then handed the money to the defendant who placed it in his pocket.

Contrary to Sheffield's contentions, this Court held that the evidence was sufficient to show the defendant's control of the pills prior to the delivery and, relying on *Gonzalez* held that the evidence showed that the defendant was not only aware of Delgado's existence and identity, but also acted upon Delgado's instructions concerning the number of pills desired during the second delivery. This, the Court held, showed a "constructive transfer" from the defendant to Delgado. *Sheffield*, supra, at 405.

*Queen v. State*, 662 S.W.2d 338 (Tex.Cr.App.1983), dealt with a motion to quash an indictment which alleged that the defendant

"... did then and there unlawfully, knowingly and intentionally deliver a usable quantity of marihuana to Ben Neel in an amount more than one-fourth ounce and for remuneration by transferring the said marihuana into a motor vehicle within the care and control and custody of the said Ben Neel and by transferring the said marihuana to the actual custody of the said Ben Neel."

As against the defendant's argument that the indictment failed to give proper notice as to the type of delivery upon which the State was relying, this Court held:

"The indictment alleges an actual transfer (by transferring the said marihuana to the actual custody of the said Ben Neel) and a constructive transfer (by transferring the said marihuana into a motor vehicle within the care and control and custody of Neel.)" *Queen,* supra, at 341.

In concluding that the indictment alleged both actual and constructive transfer, the Court implies that the type of delivery may well be gauged by the type of "possession" which results in the transferee.

In *Davila v. State,* 664 S.W.2d 722 (Tex. Cr.App.1984), this Court affirmed the Amarillo Court of Appeals' reversal of the defendant's conviction for constructive transfer of heroin. The evidence there showed that Agent Chism and an informant arrived at a residence belonging to the defendant's common law husband's brother. When they arrived, one Cosme (the defendant's common law husband) was standing in the front yard conversing with someone in a parked truck. Chism and the informant entered the residence where appellant was seated on a couch next to Cosme's sister-in-law. The defendant asked Chism what he wanted and he responded, "Four." The defendant then went out to the yard and talked with Cosme who went around the house and a few minutes later entered the house. Cosme asked Chism what he wanted and he again responded, "Four," at which time Cosme handed Chism four balloons of heroin in exchange for $120. Chism and the informant then departed.

Davila was charged with delivery by constructive transfer of the heroin to Chism. This Court, following the rationale of *Rasmussen* held that since the evidence presented failed to show that the defendant had direct or indirect control of the contraband prior to its delivery, and failed to show that Cosme was acting at the instance or direction of the defendant, the evidence was insufficient to show a constructive transfer. *Davila,* supra, at 724–725.

To date, the above cases appear to be the entire body of law from this Court on the subject. Very little can be gleaned from them by which bright line rules can be extracted. Keeping in mind that we are discussing delivery by either actual or constructive transfer, we can express the following rules:

1. The transferor must know of the existence of the transferee. *Gonzalez v. State,* supra.
2. Prior to an alleged delivery, the transferor must have either direct or indirect control of the substance transferred. *Rasmussen v. State,* supra.

Where the difficulty comes is in attempting to interpret whether the terms "constructive" and "actual" are meant to describe

1. The type of possession the transferor had prior to the transfer; or
2. The type of possession the transferee has following the transfer; or
3. A transfer involving the presence or observance of an intermediary.

Under the holding of the majority in the instant cause, when combined with other previous opinions of this Court, an "actual" transfer could be accomplished only where the transferor had personal possession of the goods and physically gave them to the transferee such that the transferee personally possessed the goods. *Sheffield v. State,* supra; *Garza v. State,* supra; and *Rasmussen v. State,* supra. Such a construction unduly restricts the clear intent of the statute and totally disregards that portion of the definition of delivery which says "whether or not there is an agency relationship."

The time has now come to attempt to bring some order out of the chaos we have wrought upon ourselves, and the instant case is the proper vehicle. In looking at the definition of "deliver," supra, it is clear that the statute contemplates a completed "transfer." It would therefore follow that the type of transfer, whether actual or constructive, is gauged by the type of "pos-

session" which results in the transferee following the delivery. This becomes even more apparent when we consider that the term "whether or not there is an agency relationship." This term must be given meaning, and what it tells us is that a delivery may be completed by the use of an agent either for the transferor or the transferee without affecting the criminal responsibility of the transferor.

Therefore, I would hold that in determining whether a delivery was an actual or constructive transfer, we look only to the type of possession resulting in the transferee and determine whether it is an actual or constructive transfer. The type of possession had by the transferor prior to the delivery should be of no moment in determining whether the offense has been completed since transfer as used in the statute contemplates a completed transaction, which is complete when either actual or constructive possession of the contraband is in the transferee.

Since the majority fails to give such a construction to the statute, I must vigorously dissent.