Scott **WALLACE**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 05–88–00437, 05–88–00440–CR.

Court of Appeals of Texas,
Dallas.

April 28, 1989.

Rehearing Denied June 2, 1989.

---

Kevin J. Clancy, Dallas, for appellant.
Don Davis, Dallas, for appellee.

Before McCLUNG, BAKER and KINKEADE, JJ.

KINKEADE, Justice.

Scott Wallace appeals his conviction upon four indictments of delivery of controlled substances. All four cases were tried together before the trial court. The court assessed punishment at twenty, eight, six and five years confinement for the offenses respectively. Wallace contends that the trial court erred in 1) convicting him of actual delivery when the evidence showed only constructive delivery; 2) admitting evidence when the proper chain of custody was not proved; and 3) denying Wallace's motion to suppress evidence. We disagree and affirm the trial court's judgment.

In December, 1986, T.W. Welch was working as an undercover police officer in

Richardson, Texas. Welch suspected that Wallace was dealing drugs and picked him up as Wallace left the police station after posting bail for a traffic warrant. Wallace asked Welch to take him to pick up his impounded car. On the way, Welch stopped in a store parking lot and pretended to wait for a red Camaro. Wallace asked Welch if he was there to "do a drug deal." Welch responded that he was. Wallace then offered to sell him some marihuana. Welch agreed to buy and took Wallace to get his car. He followed Wallace to another parking lot where Wallace told him to wait. Wallace left and returned a few minutes later with another man called "Bruce." Wallace told Bruce to "give it to him," whereupon Bruce handed Welch a plastic bag containing marihuana. Welch paid Wallace and obtained his phone number.

A few days later, Welch called Wallace and asked to buy some "crank". Wallace told Welch to meet him at a parking lot. Wallace arrived accompanied by Kenneth Turner. Welch gave some money to Wallace, who then signaled Turner. Turner handed Welch some methamphetamine.

On a date between Welch's purchases, a Garland undercover police officer, Micketta Pratt, went to Wallace's home with an informant, Camille Crow. Crow and Wallace went into another room. When Crow came out, she and Pratt went into the bathroom. Crow gave Pratt a package of methamphetamine which she had just purchased from Wallace. They came out of the bathroom and Pratt asked to buy some more "stuff." She then purchased some amphetamine from Wallace and placed it and Crow's package in her purse. These events occurred late at night, so Pratt went home and placed the purse containing the illegal drugs in the refrigerator. The next day, Pratt took the drugs to the police station.

On December 12, 1986, an undercover informant, Franklin Camp, accompanied informant LaDonna Greenwell to Wallace's home to attempt to buy illegal drugs. Camp was wearing a body microphone. He asked to purchase an "eight ball" and Wallace gave him some methamphetamine.

Camp took it into the kitchen and injected a portion of the drugs into his arm, then paid Wallace. Camp and Greenwell gave the remaining drugs to officer Alex Pena. Pena and other officers obtained a search and arrest warrant. Camp then called Wallace back that night and asked to buy some more drugs. Wallace told him to "come back by."

The Addison Police Department arranged for the Dallas Police Department tactical squad to assist with the execution of the warrant. Camp and Greenwell returned to Wallace's condominium. Camp bought more drugs from Wallace and then gave a prearranged signal through his body microphone. Officer Pena entered the room and handcuffed Wallace. He then recovered the drugs from Camp's pocket. Wallace was charged with delivery of controlled substances to Welch, Pratt and Camp. We note that Addison police officer Ronnie Cox was killed during the execution of the search warrant. Although we wish to acknowledge this fact, we do not find it pertinent to the disposition of these cases.

■ Wallace's first point of error relates to the two deliveries of drugs to Welch. The indictment alleged actual delivery. Wallace contends that, because he himself did not hand the drugs to Welch, only constructive delivery was proven. Wallace correctly argues that proof of constructive delivery cannot support a conviction of actual delivery unless the law of parties is properly invoked. *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App.1987); *see* TEX.PENAL CODE ANN. § 7.01–7.02 (Vernon 1974).

■ Because this was a bench trial, no written jury charge existed. When trial is to the court without a jury, we must presume that the trial court applied the correct law.

We presume that the trial court in this case correctly applied the law of parties to the facts. Under the law of parties, the evidence in this case would support a conviction for actual delivery of a controlled substance as alleged in the indictment. *See Conaway*, 738 S.W.2d at 694. We overrule the first point of error.

In his second point of error, Wallace contends that the trial court erred in admitting into evidence the drugs recovered by the undercover officers. Although multifarious, the point appears to complain of errors relating to each of the four cases on appeal. Regarding the transaction with Pratt, Wallace claims that Pratt broke the chain of custody when she put both of the drug packages which she and Crow had bought into her purse, and then put her purse in her refrigerator overnight. Wallace does not, however, allege that the evidence was tampered with in any way, nor does the record show any tampering. Therefore, Wallace's objection goes to the weight and not the admissibility of the evidence. *DeLeon v. State*, 505 S.W.2d 288, 289 (Tex.Crim.App.1974). No error is shown.

Regarding the transaction with Camp, Wallace maintains that the chain of custody of the drugs purchased by Camp had been broken, and that those drugs had been altered or destroyed. Camp injected a portion of the drugs he bought from Wallace into his arm, and another portion into the sink. He turned the remainder of the drugs over to officer Pena. Wallace claims that Pena incorrectly weighed and mislabeled the drugs. The only mislabeling apparent from the record is an incorrect date of December 11, 1986 rather than December 10, 1986. On the witness stand, Officer Pena explained that he got the dates mixed up. His credibility then became a matter for the jury to assess. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App. 1978).

As to the incorrect weighing, Pena testified that he weighed all drugs which he brought to the police station on an old scale in the office. This weighing only served to approximate the size of the evidence so as to keep track of it. He testified that the police laboratory does the accurate weighing which is used to charge offenders. The Controlled Substances Act does not require an arresting officer to weigh drugs which he has recovered. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15 § 4.01 et seq. The drug weight must correspond to the weight charged in the indictment. *See Ex parte Osbourn*, 574 S.W.2d 568, 568–69 (Tex.Crim.App.1978). Wallace was charged in accordance with the police laboratory's statement of the weight of the drugs which Pena recovered.

Wallace argues that Camp's acts of expending a portion of the drugs he bought breaks the chain of custody. Reducing the amount of drugs does not affect the chain of custody, but goes to the amount of drugs Wallace would be charged with delivering. The weight of the drugs admitted into evidence corresponded to the weight of drugs Wallace was charged with delivering. No error is shown. *See Osbourn*, 574 S.W.2d at 568–69.

On the Welch transaction, Wallace claims that there was no evidence that he actually delivered methamphetamine to Welch because the drugs were never admitted into evidence. However, the methamphetamine was in the courtroom, was offered for record purposes, and was shown to witnesses. Both Welch and Anne Weaver, the police chemist who analyzed it, identified the drugs. The State proved the chain of custody and the nature of the drugs. Both witnesses were cross examined about the drugs. Wallace had access to the drugs for analysis purposes.

The Court of Criminal Appeals has held that the drugs themselves need not be admitted into evidence as long as the drug had been analyzed and the chain of custody explicated. *Lake v. State*, 577 S.W.2d 245, 246 (Tex.Crim.App.1979). These requirements have been met in this case. Furthermore, Wallace was not harmed by the State's failure to introduce the methamphetamine into evidence. There was an abundance of testimonial evidence to support Wallace's conviction of delivery of drugs to Welch. We overrule the second point of error.

Wallace complains that the trial court erred in denying his motion to suppress the evidence seized pursuant to a search warrant in connection with Camp's second purchase of drugs from Wallace. He claims that the warrant was issued

878

without probable cause. Officer Gregg Layman swore out the affidavit supporting the search warrant. He based his affidavit on a conversation which he monitored between Camp and Wallace concerning their first drug transaction. Layman was in a car along with other officers monitoring Camp's conversations by means of a microphone which Camp was wearing. Layman and the other officers could hear the transaction between Camp and Wallace through the receiver in their car. They also made a tape recording of the transmissions from Camp's microphone, but the recording turned out to be unintelligible.

Wallace contends that the fact that the tape recording could not be understood implies that Layman could not have understood the conversation being monitored. However, Layman testified that he heard and clearly understood the conversation between Camp and Layman as it was transmitted. There was also expert testimony that it was possible that the officers could hear the transmission clearly while, at the same time, the tape recorder might not be working. It was within the province of the trier of fact to believe Layman's testimony that he heard the conversation between Wallace and Camp.

An affidavit in support of a search warrant may be based upon an officer's personal knowledge and direct observations. *Rangel v. State,* 435 S.W.2d 143, 144 (Tex. Crim.App.1969). Officer Layman testified that he heard the conversation between Camp and Wallace clearly. His affidavit made no mention of reliance on the tape recording. Therefore, the affidavit supporting the search warrant was not defective and the evidence gathered under the warrant was properly admitted into evidence. We overrule Wallace's third point of error and affirm the trial court's judgment.