**Rickey Allen FLETCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–99–00187–CR.

Court of Appeals of Texas,
Texarkana.

. Submitted Nov. 21, 2000.

Decided Jan. 11, 2001.

Lance W. Hinson, Mt. Pleasant, for appellant.

Charles C. Bailey, Dist. Atty., Mt. Pleasant, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Rickey Allen Fletcher appeals his conviction for delivery of a controlled substance in an amount less than four grams but greater than one gram. Fletcher was alleged to have sold methamphetamine to Lowell Parker, a police informant, at the home of Janice Buckosbie. A jury assessed punishment at eight years' confinement, but recommended that Fletcher be placed on eight years' community supervision and be fined $4,000. The trial court sentenced him accordingly.

■ Fletcher first contends the trial court erred in allowing Shanna Hampton, a chemist with the Department of Public Safety (DPS), to testify about the weight of the methamphetamine without requiring that she be qualified "as an expert in the field of weighing any substance." He fur-ther contends the State failed to qualify her concerning her knowledge of how the electronic scale she used determined the weight of the substance. For the latter contention, he cites *Ochoa v. State*, 994 S.W.2d 283, 284–85 (Tex.App.—El Paso 1999, no pet.), in which the El Paso Court of Appeals held that it was error to admit evidence of the defendant's speed as detected by a police radar gun because the police officer could not explain how the radar gun calculated the defendant's speed or the scientific theory underlying the calculation.

■ The State contends that Fletcher's contention is improperly preserved. An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App.1985); *Scherl v. State*, 7 S.W.3d 650, 652 (Tex.App.—Texarkana 1999, pet. ref'd). The record shows that Hampton first answered some general questions about her education and training, and the tests used to analyze suspected controlled substances. The following exchange then occurred:

Q When you tested the suspected controlled substance did you determine in your opinion that it contained methamphetamine?

A Yes, sir.

Q And what was the weight of the substance?

[DEFENSE COUNSEL]: I object to that testimony. I don't believe there's any proper question so far as her testimony in weights and measures, she says she is a chemist.

THE COURT: Overrule the objection.

■ Fletcher's objection was not sufficiently specific to notify the trial court of his objection that the State failed to qualify Hampton as an expert concerning how the electronic scale determines weight or the scientific theory underlying that deter-

mination. His objection was sufficiently specific, however, to put the trial court on notice that he was objecting to Hampton's qualifications to testify as an expert in the field of weighing methamphetamine.

The State contends that evidence of what police determined to be the weight of the substance, coupled with Hampton's testimony, is sufficient to establish the weight of the substance. The State cites *Blackmon v. State,* 786 S.W.2d 467, 470–73 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd), *overruled on other grounds, Williams v. State,* 965 S.W.2d 506, 508 (Tex.Crim.App.1998). However, *Blackmon* is distinguishable in that it did not involve a contention that the chemist was not qualified as an expert.[1] Further, in the present case, the weight of the substance as determined by the police included the weight of the packaging. Therefore, Hampton's testimony was needed to establish the weight of the substance.

■ Fletcher maintains the trial court erred in failing to make a preliminary finding that Hampton was qualified to render an opinion on the weight of the substance.[2] "The notion that a principled distinction can be drawn between fact and opinion is illusory." 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 701.2 (2d ed.1993). Estimates of age, size, weight, distance, etc., made by qualified lay witnesses are generally admissible. *Montez v. Bailey County Elec. Coop.,* 397 S.W.2d 108, 111 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.); *see also* GOODE, ET AL., *supra.* This is true as long as such estimates are rationally based on the witness's perception and are helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R.EVID. 701.

In contrast, a qualified expert witness may testify in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. TEX.R.EVID. 702. Hampton's testimony was based on her perception of what the scale indicated was the weight of the methamphetamine. Consequently, the question is whether Hampton's testimony requires scientific, technical, or other specialized knowledge, and whether such knowledge would be helpful to the trier of fact.

■ Assuming specialized knowledge is required to determine the weight of a substance, such knowledge is subsumed in the field of chemistry. Chemists are typically required to determine the weight of substances in the course of performing chemical analyses. *See, e.g., Gabriel v. State,* 900 S.W.2d 721, 728 (Tex.Crim.App. 1995); *Latham v. State,* 20 S.W.3d 63, 67 (Tex.App.—Texarkana 2000, pet. ref'd).

1. *Blackmon* does not present authority for the State's position. The issue in *Blackmon* was whether there was sufficient evidence that the defendant possessed 200 grams of methamphetamine. *Blackmon v. State,* 786 S.W.2d 467, 470 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd), *overruled on other grounds, Williams v. State,* 965 S.W.2d 506, 508 (Tex. Crim.App.1998). The State's chemist testified only about the weight of pure methamphetamine present in the substances found in six separate containers, without regard to the weight of adulterants and dilutants. *Id.* at 471. The weight of pure methamphetamine totaled approximately 150 grams. *Id.* However, the expert also testified about the total weight of the substance found in one of those containers and the percentage of methamphetamine found in that substance. *Id.* at

472. The testimony of a co-defendant was needed to establish the existence of adulterants and dilutants in the substance found in that container. *Id.* at 473. Thus, the co-defendant's testimony was used, not to determine the weight of the substance, but to verify that adulterants and dilutants existed in the substance, the weight of which the chemist had already determined.

2. Fletcher is challenging Hampton's qualifications to weigh the substance as distinguished from her qualifications to determine the weight of the component elements of the substance. That is, he is not challenging her qualifications to determine the weight of pure methamphetamine in the substance apart from any adulterants and dilutants.

Fletcher did not object to Hampton's qualifications as an expert in performing chemical analyses. Therefore, his contention is improperly preserved.

■ However, any specialized knowledge required to determine the weight of a substance does not automatically present an issue of admissibility. Witnesses do not have to be qualified as experts to testify about their use of any and every skill. Jurors are sufficiently familiar with the concepts of weights and scales to understand testimony concerning what a substance weighs and to decide facts based on that testimony. Such testimony is readily impeachable by exploring the witness's training and experience, and the process used to calibrate the equipment and determine an accurate weight. Thus, the trial court was not required to conduct a preliminary inquiry into Hampton's qualifications to testify about the weight of the methamphetamine.

Furthermore, Hampton testified that she has a Bachelor of Science degree and has worked for two years as a criminal forensic chemist with the DPS. After being hiring by the DPS, she received six months of training in two different laboratories. She testified that she has been trained to take the weight of controlled substances and that she has tested and weighed over 1,000 samples since joining the DPS.

Although on cross-examination she admitted that she does not know how her electronic scale determines the weight of a substance, she nevertheless testified that she is trained to calibrate the scale and that she calibrates it every day. She also testified that another person in the laboratory calibrates the scale every three months and that the scale is calibrated by an outside source once per year. Fletcher's first point of error is overruled.

■ Fletcher next contends the evidence is legally and factually insufficient. In reviewing the legal sufficiency of evidence, we look to see whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993).

■ Under a factual sufficiency standard, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 12 (Tex.Crim.App.2000); *see also Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996) (factual sufficiency analysis requires the court of appeals to view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust). Accordingly, we will reverse the fact finder's determination only to "arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 14. Otherwise, we must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence. *Id.* at 9.

■ A person commits a felony offense if he knowingly or intentionally "delivers" a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.113(a) (Vernon Supp.2001). Delivery of a controlled substance may be accomplished in one of three ways: by actual transfer, constructive transfer, or an offer to sell. *Ferguson v. State*, 622 S.W.2d 846, 848 (Tex.Crim.App. [Panel Op.] 1980) (citing TEX.REV.CIV.STAT.ANN. art. 4476–15, § 1.02(8) (Vernon 1976)). So that the ac-

cused may know the precise nature of the accusation against him, the State must specify in the indictment the kinds of delivery it will try to prove. *Id.* Although the State could have alleged all manners of delivery, *State v. Garrett*, 798 S.W.2d 311, 314 (Tex.App.—Houston [1st Dist.] 1990), *aff'd*, 824 S.W.2d 181 (Tex.Crim.App.1992), it alleged only that Fletcher delivered the cocaine by actual transfer. Thus, the State was bound to prove beyond a reasonable doubt that Fletcher delivered the cocaine by actual transfer. *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App. 1987).

 Actual delivery of a controlled substance has been defined as a complete transfer of the real possession and control of the substance from one person to another. *Id.* at 695. As commonly understood, an actual transfer or delivery contemplates the manual transfer of property from the transferor to the transferee or to the transferee's agents, or to someone identified in law with the transferee. *Heberling v. State*, 834 S.W.2d 350, 354 (Tex.Crim. App.1992); *Cohea v. State*, 845 S.W.2d 448, 450 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

 Officer Ron Plaxco testified that he met with Parker at another location, searched him, drove with him in Parker's car to Buckosbie's house, and gave him $250 to buy drugs. Plaxco testified that he saw Fletcher exit the house, walk up to the driver's side of Parker's car, and then turn and walk toward the garage. According to Plaxco, Parker followed Fletcher into the house through the garage. Two or three minutes later, Parker emerged from the house with the methamphetamine.

On cross-examination, Plaxco admitted that he did a pat-down search of Parker and not a full body search. Specifically, he admitted that he did not search Parker's shoes or socks. He also denied promising or even implying that he would help Par-

ker by speaking with the district attorney about his pending criminal case.

Parker testified that he followed Fletcher into the house through the garage and proceeded with him into the bathroom. Parker testified that Fletcher produced some methamphetamine from inside the vanity and some from his pocket and that he gave Fletcher the $250 to complete the transaction. Parker then carried the drugs back to Plaxco, who was waiting in the car. Parker denied carrying drugs at any other time during that day.

On cross-examination, Parker admitted that he was serving five years' probation for selling drugs. He testified that Plaxco told him it would help him to work as an informant. He also testified that Plaxco's partner, Matt Hooper, told Parker that Hooper would help him if he worked as an informant.

Fletcher denied that he sold drugs to Parker. He testified that he was in the business of buying and selling automobiles. He testified that he went to Buckosbie's house with a friend to look at a truck his friend wanted to sell. He had only been there a few minutes when, "A car pulled up, said they wanted to talk to Rick [Fletcher]." He testified that he knew the driver only by name, but knew he was "not the kind of person I wanted to be around."

At this point Fletcher's testimony is contradictory. He first testified that he turned around and went back into the house and walked into the bathroom. He testified that the driver followed him into the house. Later, he testified that the driver followed him into the house and went into the bathroom, while he returned to the front of the house. He testified that he did not speak to the driver.

Fletcher contends his conviction rests on the testimony of Parker, a convicted drug felon who was working with the State to receive a lighter sentence. However, reviewing the evidence in the light most favorable to the State, the jury could have concluded beyond a reasonable doubt that

Fletcher delivered methamphetamine to Parker based solely on Parker's testimony. Thus, the evidence is legally sufficient.

In addition, as the judge of the weight and credibility of the evidence, the jury was entitled to believe Parker's testimony, despite Fletcher's efforts to impeach him. Thus, the State's evidence, when viewed in a neutral light, is not greatly outweighed by contrary proof. Therefore, we find the evidence is factually sufficient to support the jury's verdict. Fletcher's second point of error is overruled.

The trial court's judgment is affirmed.