**Jose GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–90–00291–CR.**

Court of Appeals of Texas, Dallas.

Nov. 13, 1990.

---

**622**

Bruce Anton, Dallas, for appellant.

J. Matthew Goeller, McKinney, for appellee.

Before STEWART, OVARD and BURNETT, JJ.

## OPINION

OVARD, Justice.

On January 9, 1990, a jury in Collin County convicted Jose Gonzales of constructive delivery of cocaine. The jury also found two enhancement paragraphs true and sentenced Gonzales to forty years' imprisonment. He asserts on appeal that the trial court erred in the submission of the charge to the jury. He raises three points of error: (1) the trial court erred in refusing his request for an accomplice witness instruction in the charge; (2) the trial court erred in refusing to apply the law to the facts as required on the charge of constructive delivery; and (3) the trial court erred in holding that the evidence corroborated the testimony of an accomplice witness. We sustain the second point of error and reverse the judgment of the trial court. Because we sustain appellant's second point, we need not reach points of error one and three.

## FACTS AND PROCEDURAL HISTORY

The case arises from a police undercover drug buy that occurred on May 11, 1989. At that time, Tammy Pierce was a McKinney police officer. Callie Coker was on felony probation for delivery of marijuana. Sometime before May 11, Coker was arrested again for probation violations. The State agreed not to revoke her probation if she helped make twelve drug cases against local dealers. Officer Pierce wanted to make a case against Jose Gonzales, but she did not know him well enough to make a buy. She used Coker to set up the transaction.

On May 11, 1989, Pierce and Coker drove to Gonzales's house. They found Gonzales on the front porch and sat down near him. Coker negotiated with Gonzales. She said that she wanted to buy a quarter ounce of cocaine. Coker testified that she told Gonzales that she intended to share the cocaine with Pierce and Pierce's boyfriend. Gonzales motioned to another man, conversed with him privately, and the other man

walked off. Pierce did not hear any of the negotiations. The second man returned with a small package. Coker took the package and gave it to Pierce. Pierce gave Coker $25.00, which she conveyed to Gonzales. Pierce and Coker left. The package contained .13 grams of cocaine. On May 24, 1989, police arrested Gonzales for cocaine delivery.

■ Since there was no hand-to-hand exchange between Gonzales and Pierce, the State prosecuted on the theory of constructive transfer. To convict Gonzales of constructive transfer of cocaine, the jury had to find that Gonzales exercised some control over the cocaine and that he transferred it to Coker knowing that some person other than Coker would receive some of the cocaine. *Sheffield v. State*, 623 S.W.2d 403, 405 (Tex.Crim.App. [Panel Op.] 1981); *Gonzalez v. State*, 588 S.W.2d 574, 577 (Tex.Crim.App. [Panel Op.] 1979). The offense does not require that Gonzales know the identity of the ultimate transferee, but it does require that at the time of transfer he be aware of the existence of an ultimate transferee. *Gonzalez*, 588 S.W.2d at 577. Part of Gonzales's defense consisted of challenging the State's evidence that Gonzales knew at the time of transfer that Coker would share the cocaine with Pierce.

Gonzales objected to the trial court's jury charge and dictated a proposed jury charge which applied the law of constructive transfer to the facts of his case:

> If you find from the evidence, beyond a reasonable doubt that on or about the 11th day of May 1989, in Collin County, Texas, the defendant, Jose Gonzales, did then and there intentionally or knowingly deliver to T.C. Pierce a controlled substance, namely cocaine, in an amount less than 28 grams ... by transferring a controlled substance to Callie Coker and that the Defendant knew that T.C. Pierce was the transferee, then you will find the Defendant guilty as charged in the indictment.

The trial court refused to charge the jury as Gonzales requested. The judge included in the abstract section of the charge a general definition of constructive transfer.

He mentioned constructive transfer in the application paragraph but failed to apply the definition to the facts:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 11th day of May, 1989, in Collin County, Texas, the defendant, Jose Gonzales, did then and there intentionally or knowingly deliver to T.C. Pierce, a controlled substance, namely: cocaine, in an amount less than twenty-eight (28) grams ... by constructively transferring the said controlled substance to T.C. Pierce, then you will find the defendant guilty as charged in the indictment.

On appeal, Gonzales urges that the trial court's refusal to apply the law to the facts constituted reversible error. We agree.

## LEGAL ANALYSIS

■ The Court of Criminal Appeals has provided a framework for analyzing alleged error in the jury charge. *See Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex.Crim.App.1984). Under *Almanza*, the appellate court must decide first whether the charge complained of contains error. If the appellate court finds error, the second part of the *Almanza* test requires the court to assess the harmfulness of the error in light of the total circumstances of the trial. *Almanza*, 686 S.W.2d at 171. The appellate court must examine the state of the evidence, the entirety of the jury charge, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. Appellants receive different treatment depending upon whether they objected at trial to the defect in the charge. If appellant objected, the trial court's error requires reversal if appellant suffered some harm due to the error. *Almanza*, 686 S.W.2d at 171. If appellant failed to object to the error at trial, the error merits reversal only if it caused appellant "egregious harm." *Id.*

■ We conclude that the trial court erred in refusing to apply the law of constructive transfer to the facts of the case. In jury trials, criminal defendants are entitled to "a written charge distinctly setting

forth the laws applicable to the case." TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1990). Texas courts interpret this principle "to require the [trial] court in its instructions to apply the law to the very facts of the case before it." *Beggs v. State*, 597 S.W.2d 375, 379 (Tex.Crim.App. [Panel Op.] 1980). An abstract instruction is not enough. *Nugent v. State*, 749 S.W.2d 595, 598 (Tex.App.—Corpus Christi 1988, no pet.). The language that Gonzales proposed in his objection to the charge was substantially correct, and it was sufficient to call the trial court's attention to the lack of specificity in the application paragraph. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1990). The trial court judge should have incorporated Gonzales's proposed language into the abstract paragraph or penned his own words which captured the same meaning. *Beggs*, 597 S.W.2d at 379.

■ Because Gonzales objected at trial to the defective charge, he is entitled to reversal if he suffered some harm due to the error. *Almanza*, 686 S.W.2d at 171. We assess the error in the context of the entire record. If we cannot conclude beyond a reasonable doubt that the charging error made no contribution to the conviction or to the punishment, we must reverse the judgment of the trial court. TEX.R. APP.P. 81(b)(2); *Nugent v. State*, 749 S.W.2d at 599.

We cannot conclude that the error was harmless. Although the trial court defined "constructive transfer" in the abstract portion of the charge, the failure to apply the definition to facts may have confused the jury as to what they had to find. After the jury retired to deliberate, the foreman sent a jury note to the judge:

> In order to be found guilty of the delivery charge, is it a requirement that Callie told Gonzales the cocaine was for both herself and Tammy?

The judge replied that the jurors should look at the instructions to find the answer because for him to answer would represent a comment on the weight of the evidence. The fact that the jury asked the question suggests that the charge did not clarify what they had to find in order to convict Gonzales.

They may not have understood what Gonzales had to know at the time he sold the cocaine. Callie Coker's testimony that she told Gonzales that she planned to share the cocaine with Pierce was the principal evidence indicating that Gonzales knew, when he sold the cocaine, that Pierce was the ultimate transferee. The jury asked whether they could convict Gonzales without believing Coker's testimony. They convicted Gonzales without receiving an answer. The jury may have decided that they believed Coker. The jurors were entitled to do so. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). However, the circumstances also suggest the possibility that the jurors disbelieved Coker and convicted Gonzales anyway, either because they did not understand the offense or because they thought Gonzales should have known that Pierce would get part of the cocaine. Juries are not entitled to create their own legal theories. *See Morehead v. State*, 746 S.W.2d 830, 838 (Tex.App.—Dallas 1988, pet. granted).

■ In applying the harmless error rule, the appellate court focuses on the integrity of the process leading to conviction rather than on the propriety of the outcome. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim.App.1989). We focus on whether the error at issue might possibly have prejudiced the jurors' decision-making process. *Harris*, 790 S.W.2d at 587–88. Because we cannot exclude the possibility that the defective charge prejudiced the jurors' decision-making process, we cannot declare the charging error harmless. Consequently, we reverse the judgment of the trial court and remand the case for a new trial.