IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-212-CR





ANDRE SCOTT,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 7517, HONORABLE OLIVER S. KITZMAN, JUDGE PRESIDING



 




 Appellant Andre Scott appeals his conviction for the constructive delivery of less
than twenty-eight grams of cocaine. After the jury found appellant guilty, the trial court assessed
his punishment at sixteen years' imprisonment.

 In his sole point of error, appellant challenges the sufficiency of the evidence to
sustain his conviction. He contends that as a matter of law the evidence is insufficient to establish
constructive delivery or transfer of the cocaine as alleged in the indictment. We agree and will
reverse the judgment of conviction.

 The standard of reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found beyond a reasonable doubt the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319 n.12 (1979); Jackson v. State, 672 S.W.2d 801, 803 (Tex. Crim.
App. 1984). The same standard applies to circumstantial evidence cases as well as cases involving
direct evidence. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990); Christian v.
State, 686 S.W.2d 930, 934 (Tex. Crim. App. 1985); see also Geesa v. State, 820 S.W.2d 154
(Tex. Crim. App. 1991). (1) 

 The sufficiency of the evidence must also be measured against the jury charge. If
the evidence does not conform to the jury instructions given, it is insufficient as a matter of law. 
Nickerson v. State, 782 S.W.2d 887, 891 (Tex. Crim. App. 1990); Garrett v. State, 749 S.W.2d
784, 802-03 (Tex. Crim. App. 1988) (op. on reh'g); Boozer v. State, 717 S.W.2d 608, 610-11
(Tex. Crim. App. 1984).

 With this background, we turn to the facts of the instant case. Salvador Abreo, a
narcotics officer for the Texas Department of Public Safety, testified that on May 16, 1991, he
was working in an undercover capacity in Fayette County. Abreo was working with a confidential
informer, later shown by the evidence to be one Randy Witte. According to Abreo, Witte had
been talking to Timothy Dobbins "all along," and they all met at the Charter Food Store about
7:45 or 8 p.m. on May 16th. Dobbins did not know that Abreo was an undercover officer. 
Dobbins, therefore, had not been searched for either money or drugs on his person.

 Abreo related that they drove in Dobbins's car to the Circle T Bar or Club in
LaGrange. Abreo was in the rear seat while Witte was in the front passenger seat of the car. 
There were a number of males in the Club's parking lot. Abreo had earlier given Dobbins fifty
dollars in cash. Dobbins got out of the car. He walked about ten yards to where appellant was
standing. Abreo could not hear the conversation between appellant and Dobbins, but he did see
an "exchange of hands" and observed Dobbins give the fifty dollars to appellant. Abreo could
not see the object, if any, handed to Dobbins, but he related that Dobbins returned to the car and
handed him three off-white colored rocks which Abreo believed to be cocaine. Abreo placed the
rocks in the outside wrapper of a cigarette package and put them in his pocket. Abreo stated that
Dobbins wanted some of the rock cocaine, but he could not lawfully give him any, so he later
gave Dobbins twenty dollars for Dobbins's assistance. (2) Abreo revealed that Dobbins then
returned him (Abreo) to Abreo's own car. Abreo placed the time of the transaction at about 8:21
p.m. Abreo had not previously encountered appellant, but had heard of a "Drake," which he
suggested was appellant's nickname.

 Dobbins, who previously had been convicted of burglary of a habitation and of
delivery of cocaine arising out of the instant transaction, testified for the State. Dobbins admitted
that he drove Abreo and Witte to the parking lot of the Circle T Bar on the date in question. He
stated that it was about 4:30 or 5:00 in the afternoon. Dobbins did not know Abreo was a peace
officer. He claimed that he had neither money nor drugs on his person at the time. Dobbins
related that when he parked the car, appellant and Greg Smith, both of whom knew him,
approached the car and "looked in." He said that while Smith was talking to "the other guys,"
appellant called him "off to the side," and that he got out of the car and walked only about ten feet
(not yards) away. Dobbins initiated the conversation with appellant by asking, "Do you have
anything?" Appellant opened a bag and gave Dobbins three rocks, and Dobbins gave appellant
the fifty dollars Abreo had given him earlier. Dobbins then testified that he returned to the car
where he gave the three rocks to Abreo. He did not get the twenty dollars from Abreo until he
had returned to Abreo's car.

 On cross-examination, he was asked if he understood what he was supposed to do
with the fifty dollars he got from Abreo. He replied: "Get some rocks from Andre [appellant]." 
Dobbins then explained that you normally get three rocks for fifty dollars.

 The State called Lou Haby, a chemist/toxicologist with the Texas Department of
Safety Crime Laboratory in Houston. Haby testified that the substance, delivered to the
laboratory by Officer Abreo, was shown by chemical analysis to be cocaine in an amount of 0.41
gram.

 The State also called Greg Smith, who had been convicted of delivery of cocaine
on May 16, 1991, in the parking lot of the Circle T Bar. Smith testified that he was "high on
crack" at the time and did not remember anything that occurred. He stated that he pleaded guilty
"to keep from getting fifty years." His testimony did not support the State's case. (3)

 The elements of the offense of delivery of a controlled substance are: (1) a person,
(2) knowingly or intentionally, (3) delivers, (4) a controlled substance. Stewart v. State, 718
S.W.2d 286, 288 (Tex. Crim. App. 1986); Swinney v. State, 828 S.W.2d 254, 256 (Tex.
App.--Houston [1st Dist.] 1992, no pet.).

 An unlawful delivery of a controlled substance can be accomplished by actual
transfer, constructive transfer, or an offer to sell. Tex. Health & Safety Code Ann. § 481.002(8)
(West 1992).

 The instant indictment, in pertinent part, alleged that on or about May 16, 1991,
appellant:



did then and there intentionally and knowingly deliver to Sergeant S. Abreo, Texas
Department of Public Safety Narcotics Officer, a controlled substance namely
cocaine, of less than twenty-eight grams by constructively transferring said
controlled substance.


The indictment by its terms limited the delivery alleged to a constructive transfer. The trial court
in its charge tracked the indictment.

 Since "constructive transfer" is not defined in the Texas Controlled Substances Act,
it must be construed according to its plain meaning. Daniels v. State, 754 S.W.2d 214, 219 (Tex.
Crim. App. 1988); Campos v. State, 623 S.W.2d 657, 658 (Tex. Crim. App. 1981). In
construing the meaning of "constructive transfer," we are guided by earlier appellate opinions. 
"Constructive transfer" occurs when the defendant transfers a controlled substance, either
belonging to him or under his control, by some other person or means, at the direction of the
defendant. Thomas v. State, 832 S.W.2d 47, 51 (Tex. Crim. App. 1992) (emphasis added);
Daniels, 754 S.W.2d at 220-22; Swinney, 828 S.W.2d at 257; Atuesta v. State, 788 S.W.2d 382,
385 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). "Constructive transfer is proved by
showing that 1) prior to the alleged delivery, the transferor had either direct or indirect control
of the substance transferred, and 2) the transferor knew of the existence of the transferee." 
Daniels, 754 S.W.2d at 220-22 (citing Rassmussen v. State, 608 S.W.2d 205, 209-10 (Tex. Crim.
App. 1980) and Gonzales v. State, 588 S.W.2d 574, 577 (Tex. Crim. App. 1979)); Swinney, 828
S.W.2d at 257. (4)

 The knowledge requirement is best discussed in Gonzales, 588 S.W.2d at 577. 
There, the Court of Criminal Appeals held that constructive transfer requires the transferor at least
to be aware of the existence of the ultimate transferee before delivery. This does not mean that
the transferor needs to know the identity or be acquainted with the ultimate recipient. It requires
only that when the State alleges constructive transfer to an alleged ultimate recipient, the accused
must have contemplated that his initial transfer would not be the final transaction in the chain of
distribution.

 In a clarifying statement, Judge Dally, concurring in Gonzales, wrote:



 The evidence simply does not show that appellant knowingly made a
delivery of heroin to Galvan [as alleged]. There is nothing in the record to show
that appellant knew that he was making a transfer of heroin, either actual or
constructive, to Galvan. There is no evidence that the appellant had ever met
Galvan or that he knew Galvan's role in the sale. The testimony of Galvan would
have supported a conviction of the appellant either for possession of heroin or for
the delivery of heroin to Montaya, but the appellant was not charged with these
offenses.


588 S.W.2d at 578 (emphasis in original). The knowledge requirement was reaffirmed in
Sheffield v. State, 623 S.W.2d 403 (Tex. Crim. App. 1981); see also Gonzales v. State, 800
S.W.2d 621, 623 (Tex. App.--Dallas 1990, no pet.); Stone v. State, 794 S.W.2d 868, 871 (Tex.
App.--El Paso 1990, no pet.).

 In the instant case, Sergeant Abreo did not see what object, if any, appellant passed
to Dobbins, but the unsearched Dobbins testified that the three rocks he handed to Abreo came
from appellant. The jury could have accepted Dobbins's testimony and found that appellant had
control of the cocaine at the time of the transfer to Dobbins. Did the evidence, however, show
that appellant exercised control or any direction over the conduct of Dobbins with regard to the
transfer of the cocaine to Abreo, or show that appellant knew that Abreo would be the ultimate
recipient of all or any part of the cocaine? According to Abreo, Dobbins, who had been given
the fifty dollars, got out of the car and approached appellant in the parking lot ten yards away. 
Abreo had not previously encountered appellant. They did not speak or have any contact with
each other. According to Dobbins, appellant, who knew Dobbins, approached the car and
"looked in." There was no evidence of any conversation. Dobbins got out of the car at a sign
from appellant, but initiated the conversation by asking appellant if he had "anything," while he
held the fifty dollars. Appellant reached into a bag and gave three rocks to Dobbins. Dobbins
explained that it was normal to get three rocks of cocaine for fifty dollars. Abreo heard no
conversation between appellant and Dobbins, and nothing in Dobbins's testimony shows that he
mentioned Abreo and Witte while talking to appellant.

 While Dobbins testified that he did not know Abreo was a police officer, he knew
that the fifty dollars was to be used to get "some rocks" from appellant. Later, Dobbins received
twenty dollars from Abreo for his assistance, further indication that Dobbins did not act as
appellant's agent or under appellant's control, direction or influence in transferring cocaine to
Abreo. See Davila v. State, 664 S.W.2d 722, 724 (Tex. Crim. App. 1984); Dawson v. State, 812
S.W.2d 635, 637 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd).

 As to the knowledge requirement, the instant case is factually similar to Gonzales. 
There is no suggestion in the record that appellant knew that the cocaine was being purchased by
Dobbins on behalf of a third person. Gonzales, 588 S.W.2d at 577-78; see also Stewart v. State,
756 S.W.2d 798, 800-01 (Tex. App.--Dallas 1988, pet. ref'd). The State relies upon Sheffield v.
State, 623 S.W.2d 403 (Tex. Crim. App. 1981). The reliance is misplaced. Sheffield involved
an appeal from an order revoking probation. The burden of proof in revocation proceedings is
by a preponderance of the evidence, not beyond a reasonable doubt. Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. 1981). Next, there are a number of factual distinctions. In Sheffield,
there were two constructive transfers of phenmetrazine (Preludin) from the defendant to Marco
Delgado (an undercover police officer), and four people were involved in the transfers, one being
an apparent employee of the defendant. As the Court of Criminal Appeals pointed out, the
defendant was aware of Delgado's existence and identity and knew the money was coming from
Delgado. He also acted upon Delgado's instruction concerning the numbers of pills desired
during the second delivery.

 We conclude, viewing the evidence in the light most favorable to the jury's verdict,
that no rational trier of fact could have found beyond a reasonable doubt all the essential elements
of the offense of constructive transfer of cocaine as alleged in the indictment and as submitted to
the jury by the trial court's charge. Our responsibility does not include substituting our view of
the evidence for that of jury's, Blankenship v. State, 788 S.W.2d 198, 207 (Tex. Crim. App.
1989); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988), but our function is to
ensure as a matter of law that no one is convicted of crime except on proof beyond a reasonable
doubt. "In carrying out our task, we remain cognizant that 'proof beyond a reasonable doubt'
means proof to a high degree of certainty. Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim.
App. 1991)." Urbano v. State, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992). The point of
error is sustained.

 Under the mandate of the United States Supreme Court in United States v. Burks,
437 U.S. 1 (1978), and Greene v. Massey, 437 U.S. 19 (1978), a judgment of conviction must
be set aside if the evidence is insufficient to support a finding of guilt, and an order of acquittal
entered.

 The judgment of conviction is reversed and reformed to reflect an acquittal.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Reversed and Reformed


Filed: November 24, 1993


Do Not Publish







* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Appellant's trial commenced on March 19, 1992, after the effective date of the Geesa
decision.
2.   Abreo also testified: "On these crackheads, what we call on the streets, every time you go
make a buy they always want a pinch or a little bit of the crack cocaine."
3.   Sergeant Abreo testified that six minutes before the transaction between appellant and
Dobbins, he (Abreo) purchased two white rocks of cocaine from Smith. This transaction was not
developed in any detail by the evidence.
4.   The trial court in its charge instructed the jury as follows:



 A "constructive transfer" of a controlled substance, as used here, means the
transfer of a controlled substance, either belonging to the person charged or under
his direct or indirect control, by some other person or manner, at the instance or
direction of the person charged. In order to establish a constructive transfer by the
person charged to some other person, it must be shown that prior to the alleged
delivery the transferor must have either direct or indirect control of the substance
transferred and the transferor knew of the existence of the transferee.