**Harold HART, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00239–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 5, 2000.

Decided Jan. 6, 2000.

Rehearing Overruled Jan. 25, 2000.

---

118

David A. Schulman, Austin, for appellant.

Tim Cone, Upshur County Dist. Atty., Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Harold Hart, Jr. appeals his conviction for the offense of delivery of a controlled substance, cocaine, in an amount of more than four grams but less than two hundred grams. A jury determined his guilt, and the court assessed his punishment and sentenced him to ninety-nine years' imprisonment. Hart contends the evidence is legally and factually insufficient to sustain his conviction, that the trial court erred in overruling his objection to the definition of "constructive transfer" included in the court's charge, and that he was denied a fair trial as a result of jury misconduct. We overrule all points of error and affirm the judgment.

In October 1995, the Narcotics Division of the Texas Department of Public Safety and the Upshur County Sheriff's Department were investigating narcotics violations in Upshur County. The investigation was well under way, and the authorities had made the decision to place Harold and his brother Bernard Hart under surveillance. They used a paid informant, Eber Baxter, Jr., to make a drug deal with Harold and Bernard. Baxter is a convicted criminal and a drug user.

Evidence is legally sufficient when, viewed in the light most favorable to the verdict, any rational trier of fact could have found that the essential elements of the offense were established beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Teer v. State,* 923 S.W.2d 11, 17 (Tex.Crim.App.1996). The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.1994). It is not the role of the court to assess the evidence as a thirteenth juror. In this type of review, the court is merely there to ensure the rationality of the fact finder. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). When conducting this review, the court is authorized to disagree with the fact finder's determination; however, it must also be appropriately deferential to the trier of fact and avoid substituting its own judgment for that of the jury. *Id.* at 133. This deference to the jury's findings is accomplished by finding fault only when the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust, and examples of such verdicts include instances in which the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Id.* at 135, *citing Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990).

Harold was charged with delivery of cocaine by constructive transfer. The essential elements of that offense are: (1) prior to the alleged delivery, the transferor had either direct or indirect control of the substance transferred; and (2) the transferor knew of the existence of the transferee. *Daniels v. State,* 754 S.W.2d 214, 221–22 (Tex.Crim.App.1988). Harold contends that the evidence presented was neither legally nor factually sufficient to prove these necessary elements.

On October 5, 1995, Baxter made contact with Harold's brother, Bernard. Baxter picked up Bernard, and they drove to a barber shop in town. At the barber shop, Bernard exited Baxter's vehicle and was observed talking to his brother Harold for a brief period of time. After this conversation, Bernard returned to Baxter's vehicle, and Harold drove away in his own

vehicle. Harold was seen traveling from the barber shop to his residence, where he stayed for only a few minutes. Harold then returned to his vehicle and was seen traveling to Lane Street, where Baxter and Bernard were waiting. Bernard again exited Baxter's vehicle and instructed Baxter to drive away. Baxter waved to Harold, whom he knew, and then drove around the block. Baxter testified that, after he drove around the block, he saw Harold transfer a package to Bernard, and that this same package was then transferred from Bernard to him. This package was subsequently turned over to the authorities, who tested and identified it as almost twelve ounces of cocaine.

Bernard testified that Harold did not supply him with the cocaine on October 5, 1995. He claims that "Preacher" Griffin was his supplier on that occasion. Bernard's testimony is wholly inconsistent, however, with the testimony he gave at his own trial. There, he named Harold as the one who supplied him with this same cocaine. None of the police officers doing surveillance on the Hart brothers saw Harold in possession of this cocaine, nor did they observe the delivery take place between Harold and Bernard. However, these officers did see the Hart brothers talking and observed Harold then make an immediate trip to his house, and they saw Harold meet Bernard and Baxter at another location, where the purchase took place. One officer testified that the amount of cocaine transferred was such a large amount that it would normally not be an amount purchased merely for personal use.

From Baxter's testimony alone, a rational trier of fact could have found that the essential elements were proved beyond a reasonable doubt. See Sheffield v. State, 623 S.W.2d 403, 405 (Tex.Crim.App. [Panel Op.] 1981); Jordan v. State, 852 S.W.2d 689, 693 (Tex.App.-Houston [14th Dist.] 1993), aff'd, 883 S.W.2d 664 (Tex.Crim. App.1994). However, the trier of fact had additional circumstantial evidence on which to base its finding, and the State may prove its case by direct or circumstantial evidence so long as it shoulders its burden of proving all elements of the charged offense beyond a reasonable doubt. Slomba v. State, 997 S.W.2d 781, 783 (Tex.App.-Texarkana 1999, pet. ref'd), citing McDuff v. State, 939 S.W.2d 607, 623 (Tex.Crim.App.1997).

Harold argues that the instant case should be reviewed and decided in accordance with Daniels, 754 S.W.2d 214. However, Daniels can be distinguished. In that case, James Daniels was convicted of unlawful delivery of marihuana, but the ultimate transferee, an undercover officer, never saw Daniels in possession of the drugs, and that officer did not receive her share of the marihuana until after she had left Daniels' presence. Id. at 223. The court held that there was insufficient evidence to show that Daniels ever had direct or indirect control of the contraband or that Daniels knew of the existence of a transferee. Id. In the instant case, there was evidence presented showing that Harold did have control over the transferred substance, and there was evidence showing that Harold was aware of the existence of the transferee. We find the evidence legally sufficient and overrule this point of error.

The evidence is also factually sufficient to sustain the conviction. In a factual sufficiency review, the contrary evidence must also be duly considered and compared against the evidence which supports the verdict. Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). However, in this case, the evidence that contradicts the verdict is minimal. Looking at all of the evidence presented, without the prism of "in the light most favorable to the prosecution," it cannot be said that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, due deference must be accorded to the jury regarding the weight and credibility of the evidence. Clewis, 922 S.W.2d at 133.

Harold next contends that the trial court erred by overruling his objection to the jury charge. The standard of review for errors in the jury charge depends on whether the defendant made a timely objection. *Mann v. State*, 964 S.W.2d 639 (Tex.Crim.App.1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (opinion on reh'g); *Hines v. State*, 978 S.W.2d 169, 174 (Tex.App.-Texarkana 1998, no pet.). When a timely objection is raised to a nonconstitutional error, reversal is required only if the error does not affect substantial rights. TEX. R.APP. P. 44.2(b).

In the instant case, Harold objected to the definition of "constructive delivery" given in the jury charge as being incorrect and diminishing the State's burden of proof. The instruction given concerning "constructive transfer" is as follows:

> The term "constructive transfer" of a controlled substance, as used here, means the transfer of a controlled substance, either belonging to the person charged or under his direct or indirect control, by some other person or manner, at the instance or direction of the person charged. In order to establish a constructive transfer by the person charged to some other person, it must be shown that, prior to the alleged delivery, the transferor must have either direct or indirect control of the substance transferred and that the transferor knew of the existence of the transferee.

Harold specifically objected to the phrase "knew of the existence" contained in the last sentence. He contends that this phrase lessens the State's burden of proof because it allows the jury to satisfy this portion of the definition by finding that Harold merely knew of Baxter's existence, rather than requiring the jury to find that Harold knew of Baxter's receipt of the cocaine.

As noted earlier, in order to have a constructive transfer, the following two elements must be present: (1) prior to an alleged delivery, the transferor must have either direct or indirect control of the substance transferred; and (2) the transferor must know of the existence of the transferee. *Daniels*, 754 S.W.2d at 221–22. In other words, prior to delivery the transferor must be aware of the existence of the ultimate transferee to the extent that he contemplated that his initial transfer would not be the final transaction in the chain of distribution. *See Gonzalez v. State*, 588 S.W.2d 574, 577 (Tex.Crim.App. [Panel Op.] 1979). There is no requirement that the transferor know of the transferee's receipt of the contraband. The definition of "constructive transfer" given in the jury charge is an accurate statement of the law and in no way lessens the State's burden of proof. This contention is overruled.

Harold's final contention is that he was denied a fair trial as a result of jury misconduct. He was tried before the same jury on two separate charges of delivery of a controlled substance. A mistrial was declared with regard to one of those charges because the jury was deadlocked eleven to one. With regard to the other charge (the instant case), the jury returned a verdict of guilty. However, when the jury was polled, one juror, Charles Daniels, Jr., stated that was not his verdict. The court sent the jury back to the jury room without further instruction, and seven minutes later a note was sent to the court stating that Daniels had misunderstood the polling question. The jury then returned to the courtroom, and Daniels stated on the record that the verdict of guilty was in fact his verdict.

On June 30, 1998, Harold filed a motion for new trial. Attached to that motion was the affidavit of his attorney, David Schulman,[1] and the affidavit of juror

---

1. David Schulman's affidavit stated:
   My name is David A. Schulman. I have been retained to represent Harold Hart on

appeal in the above styled and numbered cause.

Daniels.[2] The two affidavits stated that juror Daniels had been coerced into voting guilty and that when he sought to change his vote from "guilty" to "not guilty," he was told by the other jurors that it was too late to change his vote. Daniels also opined that many jurors considered facts not in evidence when they made their decision to find Harold guilty of the second offense.

A hearing was set on this motion for August 4, 1998. On the date of this hearing, the State objected to having a formal hearing on the ground that a juror may not impeach his own verdict under Tex.R. Evid. 606(b). The court sustained this objection after stating that she interpreted Rule 606(b) to authorize a juror to testify only to an outside influence or to rebut a claim that a juror was not qualified to serve, and that these are the only instances when a juror can testify regarding the validity of a verdict. Harold contends that he was denied a fair trial as a result of the other members of the jury coercing Daniels into believing that he could not change his vote from "guilty" to "not guilty." He argues that, based on *Buentello v. State*, 826 S.W.2d 610 (Tex.Crim.App.1992), and *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim. App.1984), Daniels' testimony was admissible and jury misconduct had been established.

In 1984, the *Sneed* court ruled that in order to show reversible error based on a discussion of parole by a jury, the defendant must prove the existence of the following factors: 1) a misstatement of the law; 2) asserted as a fact; 3) by one professing to know the law; 4) which is relied on by other jurors; and 5) who for that reason changed their vote to a harsh-

---

As part of my investigation I spoke with Charles Demond Daniels, Jr., a juror in the case. He told me that he was coerced into voting guilty on one count and, when he tried to change his vote, he was informed by other jurors that he was not permitted to change his vote.

Additionally, he told me that, during deliberations, he heard other jurors talking about the property owned by Harold Hart and speculating that he could not have afforded to purchase that property on the earnings of his business and that, therefore, he must of [sic] have been engaging in some kind of illegal activity. Mr. Daniels also indicated that he did not recall there have [sic] been any evidence admitted at trial concerning Mr. Hart's property or how he may have acquired it.

No remuneration or reward was given or offered for Mr. Daniel's [sic] statements, and it is my opinion that the statements Mr. Daniels made to me were freely and voluntarily given.

2. Charles Daniels, Jr.'s affidavit stated:

My name is Charles Demond Daniels, Jr. I served as a juror in the above styled and numbered cause.

Based on my observations of other jurors in this case, it is my opinion that the other jurors based their verdicts on individual opinion and collective assumptions, disregarding the lack of evidence in the State's case.

After listening to several hours of countless accusations, my tired mind bought into the many empty assumptions which preyed upon my f.e.a.r. (false evidence appearing real) of making a fair decision. As we took a consensus on a verdict for case #2, I wrote guilty on a piece of paper which helped to make it unanimous. After they proclaimed him guilty on the sheet for case #2, I took another long hard look at the lack of evidence in the case. After a couple of hours passed, I asked if I could change my verdict, because I felt it was a mistake. The other jurors said "no," while explaining that I had made a decision and I could not change it. I pleaded with them that I made a terrible decision, would feel real bad if I could not change my answer and wanted to change my vote to "not guilty" on case #2. They said, "no," and expressed how sorry they were that I felt bad about the decision that I made. Everyone was trying to console and comfort me but it didn't help. They wanted me to find him guilty on both counts, but we were deadlocked on case #1, all because of me.

During the deliberations, I heard other jurors talking about how could Harold Hart afford nice cars and a nice house with a not so prosperous barbeque business and that he had to be doing something else in order to obtain his possessions.

I still believe that the State did not have sufficient evidence to prove Harold Hart was guilty on case #2. I would have changed my vote to "not guilty" but was told by the other jurors that I wasn't allowed to change my vote.

er punishment. *Sneed,* 670 S.W.2d at 266. In 1992, the *Buentello* court interpreted the new Texas Rule of Criminal Evidence 606(b) [the rule in effect at the time *Buentello* was decided] to see if it changed the law regarding testimony that would be permitted to impeach a jury's verdict. *Buentello,* 826 S.W.2d at 611. The rule then stated:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*Buentello,* 826 S.W.2d at 612, *quoting* Tex. R.Crim. Evid. 606(b). The *Buentello* court held that under the new rule the test for admission of juror testimony at a hearing on a motion for new trial is whether the matter sought to be elicited is deemed by the trial court to be relevant to the validity of the verdict. *Buentello,* 826 S.W.2d at 614. It also held that what is considered relevant will be determined on a case by case basis, and also reaffirmed the five-part test set out in *Sneed* as a viable means of determining whether a jury's discussion of parole law constitutes reversible error. *Id.*

■ However, on March 1, 1998, the Texas Supreme Court and the Texas Court of Criminal Appeals once again amended Rule 606(b) governing when a juror can testify about the validity of a verdict or an indictment. The governing rule now states the following:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex.R. Evid. 606(b). Harold contends that this amendment made no substantive change to Rule 606(b). However, the addition of the final sentence in the amended rule seems to substantially alter this rule and severely limit the instances in which a juror may testify as to the validity of a verdict or an indictment. According to the plain language of the rule, jurors are now limited to testifying only about outside influences that affected their decision or testimony rebutting a claim that a juror was not qualified. As a result, by amending this rule, *Buentello* and *Sneed* are abrogated. *See Hines v. State,* 3 S.W.3d 618, 621 (Tex.App.-Texarkana 1999, pet. filed).

■ Harold argues that if the additional language in Rule 606(b) is read to prohibit a juror from testifying about jury misconduct that occurred within the jury room during deliberations, then there is a contradiction between Rule 606(b) and Rule 21.3(g) of the Texas Rules of Appellate Procedure. Rule 21.3(g) states that the defendant must be granted a new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." Tex.R.App. P. 21.3(g). However, the new Rule 606(b) can be read in conjunction with appellate Rule 21.3(g) to define jury misconduct. *Hines,* 3 S.W.3d at 622. Rule 21.3 may still be used to provide a list of specific grounds for which a new trial must be

granted, one of which is "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." TEX.R.APP. P. 21.3(g). Prior to the recent amendment of Rule 606(b), in order to establish a right to a new trial based on jury misconduct and supported by juror testimony or affidavit, the *Buentello* and *Sneed* requirements had to be met. However, as a result of the addition to Rule 606(b), if the defendant now seeks to show jury misconduct by juror testimony or affidavit, a showing is required that the testimony illustrated either the existence of an outside influence or a rebuttal of a claim that a juror was not qualified. In the case at hand, the juror's testimony and affidavit presented do not seek to prove jury misconduct by testimony about outside influences, nor do they seek to prove jury misconduct by testimony to rebut a claim that the juror was not qualified to serve. Since these are the only two instances in which Rule 606(b) will now allow juror testimony to impeach the validity of a verdict, the trial court correctly sustained the State's objection to juror Daniels' testimony at the hearing on Harold's motion for new trial. No jury misconduct has been shown. This point is overruled.

The judgment is affirmed.

Concurring Opinion by Justice GRANT.

BEN Z. GRANT, Justice, concurring.

I concur; however, I must express concern about Rule 606(b) of the Texas Rules of Evidence. I urge the Texas Supreme Court and the Texas Court of Criminal Appeals to examine the broad language of this rule in light of the possible consequences. This rule could undermine court procedures and render the jury verdicts and deliberations a mockery. It prohibits jurors from testifying about anything except outside influences that affected their decision. If, for example, a juror threatened or held a gun to another juror's head to compel his or her decision, this could not be testified to in the courtroom. If,

for example, a juror forged the name of other jurors to the verdict, this could not be testified to in the courtroom. If, for example, the foreperson violated all of the procedural instructions provided by the judge during deliberations, this could not be testified to in open court.

I understand the need to make verdicts final and the need not to open up the testimony to what might have been each juror's mental processes, but matters affecting the fundamental process of jury deliberation should not be forever closed to judicial review. In the present case, if the jury foreman refused to allow a juror to change his vote prior to the jury returning its verdict to the court, this should be a matter that could be considered by the court.