COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| TODD McMASTER, | | No. 08-11-00223-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 16th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Denton County, Texas |
| | § | |
| Appellee. | | (TC # F-2009-2549-A) |
| | § | |

## **O P I N I O N**

Todd McMaster appeals his conviction of possession of more than one but less than four grams of methamphetamine with intent to deliver, enhanced by a prior felony conviction. A jury found Appellant guilty, found the enhancement paragraph true, and assessed his punishment at imprisonment for forty years. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Craig Fitzgerald and Rodney Bolin are investigators with the Denton Police Department and both men are assigned to the Special Investigations/Narcotics Unit. Their duties include looking for people wanted by law enforcement as well as people involved in narcotics. On April 28, 2009, they went to the home of Shawn Marie Cagle in search of Appellant. When the officers arrived, they observed Cagle and Brian Coulter in the driveway. The officers walked into the garage where they found Appellant and other individuals. Fitzgerald asked Appellant

whether he had any narcotics on him and Appellant denied it.  Appellant consented to a search and Fitzgerald found a large baggie containing several smaller baggies of methamphetamine in a pocket of Appellant's shorts.[1]  Appellant pushed Bolin aside and ran out the door.  Fitzgerald commanded Appellant to stop but when he continued running, Fitzgerald used a Taser to stop him.  Appellant suffered an apparent seizure and was taken from the scene in an ambulance.  Cagle consented to a search of the home and the officers found straws and a pipe used to smoke methamphetamine.  A grand jury indicted Appellant for possession of methamphetamine with intent to deliver and the case was set for trial on August 2, 2010.  The State and defense attorney appeared for trial but Appellant did not.  Consequently, he was also indicted for jumping bail.  *See* TEX.PENAL CODE ANN. § 38.10(a)(West 2011).  The two cases were tried together and Appellant entered a plea of guilty to the bail jumping offense, but a plea of not guilty to possession of methamphetamine with intent to deliver.  The jury found Appellant guilty of both offenses.

## DISCOVERY VIOLATION

In Issue One, Appellant contends that the State failed to produce to his attorney a cellular telephone log which was used during the prosecutor's cross-examination.  Appellant admitted on direct examination that he had a lengthy criminal history and served time in prison.  He had a prior conviction for possession of a controlled substance and he had been out of jail approximately thirty days in April 2009.  He did odd jobs in order to obtain methamphetamine for his personal use.  On April 28, 2009, Shawn Marie Cagle called Appellant and he went to her house to help her move.  When he first arrived, he smoked methamphetamine with Cagle, Brian Coulter, and Cagle's boyfriend, Chris Sylvera.  Appellant did not have money to buy any drugs and Cagle provided the methamphetamine for them to smoke.  They then began packing and

---

[1]  The methamphetamine had a total weight of 2.81 grams.

moving the boxes to a trailer outside. The group took occasional breaks and smoked more methamphetamine provided by Cagle. Coulter called Appellant's cell phone at about 5 p.m. and told him that the police had driven by, so Appellant grabbed the drug paraphernalia and a baggie on top of Cagle's dresser with the intent of flushing everything down the toilet. He admitted putting the baggie in the pocket of his shorts but said he did not know it had anything in it. When he got to the bathroom doorway, Detective Fitzgerald came into the garage and told Appellant to walk towards him. Appellant denied having anything on him and consented to a search. He believed that Cagle would step forward and admit that the drugs in the bag were hers. When Fitzgerald removed the drugs from the pocket, Appellant "freaked out" and tried to get back out to the garage so Cagle would "fess up for whose drugs it really was." Appellant admitted that it was his intent to destroy the drugs but he did not intend to possess the drugs or deliver them to anyone.

During cross-examination, the prosecutor questioned Appellant about the phone call from Coulter. Appellant stated that Coulter called his cell phone at about 5 p.m. and the police walked in seconds later. Appellant said he did not have time to call anyone after receiving the call from Coulter. The prosecutor then asked Appellant to explain why the phone records showed that Coulter called Appellant at 4:38 p.m. and Appellant made two calls after concluding the call with Coulter with the first call occurring at 4:52 p.m. and the second call at 5:03 p.m. Appellant could not explain the discrepancy.

To preserve error, a party must make a timely and specific objection. *See* TEX.R.APP.P. 33.1. To be timely, an objection must be asserted at the earliest opportunity and as soon as the ground for the objection becomes apparent. *Lackey v. State*, 364 S.W.3d 837, 843 (Tex.Crim.App. 2012). Typically this means as soon as the objecting party knows or should

- 3 -

know that an error has occurred.  *Id.*  Here, the grounds for the objection became apparent when the prosecutor cross-examined Appellant while referencing the cell phone records.  Appellant did not object at that moment and instead raised the issue for the first time in his motion for new trial.  Consequently, the objection was untimely.  *See* TEX.R.APP.P. 33.1; *see also Ex parte Medellin,* 280 S.W.3d 854, 860 (Tex.Crim.App. 2008)(Cochran, J., concurring)("In Texas, we have a contemporaneous objection rule which requires all litigants to make a timely request, claim, or objection or forfeit the right to raise that request, claim, or objection after trial.").  Because any error has been waived, we overrule Issue One.

## CHARGE ERROR

In Issue Two, Appellant complains that the jury charge improperly included the culpable mental states of "intentionally" or "knowingly" when the applicable statute requires that the State prove Appellant knowingly committed the offense.  The State responds that the error, if any, is harmless.

We review charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985).  The first step is to determine there was error in the charge.  *Sakil v. State*, 287 S.W.3d 23, 25 (Tex.Crim.App. 2009); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009).  If error exists, we proceed to the second step which is to determine whether the error was harmful.  *Barrios*, 283 S.W.3d at 350.  If the appellant objected to the charge, reversal is required if there is some harm.  *Barrios*, 283 S.W.3d at 350.  If the error was not objected to, it must be "fundamental" and requires reversal occurs only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial."  *Barrios*, 283 S.W.3d at 350, *quoting Almanza*, 686 S.W.2d at 171.

A person commits an offense if he knowingly manufactures, delivers, or possesses with

intent to deliver a controlled substance in Penalty Group 1, which includes methamphetamine. TEX.HEALTH&SAFETY CODE ANN. §§ 481.102(6), 481.112(a)(West 2010).[2] To obtain a conviction under Section 481.112(a), the State must prove that the defendant (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *Id.* §§ 481.002(38), 481.112(a); *Peña v. State*, 251 S.W.3d 601, 606 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd). The indictment alleged that Appellant intentionally or knowingly possessed methamphetamine with intent to deliver. Likewise, the application paragraph of the court's charge authorized the jury to convict if it found that Appellant intentionally or knowingly possessed the specified amount of methamphetamine with intent to deliver. The abstract portion of the court's charge included definitions of both intentionally and knowingly and instructed the jury that possession means the actual care, custody, control, or management of the controlled substance.[3] The charge also included an instruction that possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.[4]

In cases involving specific-intent offenses, courts have held that the jury charge should include only the specific intent required by the statute and a jury charge is erroneous if it also includes the general culpable mental states such as intentionally or knowingly. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex.App.--Fort Worth 2010, pet. ref'd)(in an indecency with a child

---

[2] Interestingly, Section 481.115(a) provides that a person commits an offense if he intentionally or knowingly possesses a controlled substance in Penalty Group 1. TEX.HEALTH&SAFETY CODE ANN. § 481.115(a).

[3] TEX.HEALTH&SAFETY CODE ANN. § 481.002(38).

[4] TEX.PENAL CODE ANN. § 6.01(b)(West 2011).

case, the charge included the required specific intent to arouse or gratify in the application portion, but also included the culpable mental states of intentionally and knowingly); *Jones v. State*, 229 S.W.3d 489, 492 (Tex.App.--Texarkana 2007, no pet.)(in an indecency with a child case, the charge instructed the jury that indecency with a child is committed if the person intentionally or knowingly engages in sexual contact with a child); *Washington v. State*, 930 S.W.2d 695, 699-700 (Tex.App.--El Paso 1996, no pet.)(in an indecency with a child case, stating that the charge should not have included the culpable mental state of intentionally). This case, however, involves two different culpable mental states. First, the State must prove that Appellant knowingly possessed the methamphetamine. Second, it must prove that he possessed it with the specific intent to deliver. We conclude that the charge should have been restricted to those two mental states and it is erroneous because it should not have instructed the jury on the culpable mental state of intentionally in the abstract portion of the charge or in the application paragraph.

Turning to the harm analysis, we must determine whether Appellant objected on the ground raised on appeal. During the charge conference, defense counsel objected because the charge included the culpable mental state of knowingly and he believed it should be restricted to intentionally possessed with the intent to deliver. The argument raised on appeal states the opposite contention that the charge is erroneous because it included the culpable mental state of intentionally. It is doubtful that Appellant's objection preserved the issue raised on appeal, but we conclude that the record does not support a conclusion Appellant suffered even some harm from the error.

When conducting the harm analysis, we may consider: (a) the charge itself; (b) the state of the evidence, including contested issues; (c) the argument of counsel; and (d) any other

relevant information. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996). The charge is correct except for its inclusion of the intentional mental state and it required the jury to find that Appellant either intentionally or knowingly possessed the methamphetamine and he possessed it with the specific intent to deliver. The trial court's erroneous inclusion of the intentional culpable mental state did not reduce the State's burden or permit the jury to convict Appellant on less proof because an intentional mental state is a higher mental state than knowing. *See* TEX.PENAL CODE ANN. § 6.02(d)(West 2011)("Culpable mental states are classified according to relative degrees, from highest to lowest, as follows (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence."). Further, it did not prevent the jury from considering Appellant's defense that he did not own or possess the methamphetamine and simply picked it up with the intent to flush it down the toilet. We conclude Appellant did not suffer even some harm from the error. Issue Two is overruled.

## LACK OF NOTICE

In Issue Three, Appellant challenges the State's failure to provide notice of intent to introduce evidence of an extraneous burglary of a habitation offense during the punishment phase. An appellate court reviews a trial court's decision to admit evidence under an abuse of discretion standard. *See Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008). We will not overturn the trial court's decision so long as it is correct under any theory of law applicable to the case and the decision is within the zone of reasonable disagreement. *See Ramos*, 245 S.W.3d at 418.

Pursuant to Article 37.07 § 3(a)(1) of the Code of Criminal Procedure, both the State and the defense may offer evidence as to any matter the court deems relevant to sentencing, including the defendant's prior criminal record and other evidence of an extraneous crime or bad act that is

shown beyond a reasonable doubt to have been committed by the defendant regardless of whether he has been previously charged or finally convicted of the crime or act. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a)(1)(West Supp. 2012). On timely request of the defendant, notice of intent to introduce evidence under Article 37.07 must be given in the same manner as required by TEX.R.EVID. 404(b). TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(g)(West Supp. 2012). Rule 404(b) requires the State to provide "reasonable notice" in advance of trial. *See* TEX.R.EVID. 404(b).

Several weeks prior to trial, the State gave notice of its intent to use evidence of other crimes, wrongs, and acts at trial. Item 20 on the list states: "On March 11, 2009, the 16th Judicial District Court of Denton County, Texas, convicted the Defendant of Burglary of a Building in cause number F-2008-2558-A and sentenced to 6 months State Jail." During the punishment phase, the State called Gloria Hernandez as a witness. Appellant immediately objected to her testimony on the ground that he was given notice of the burglary of a building conviction involving Hernandez as the complainant, but he had not been given notice of the State's intent to introduce evidence of a burglary of a habitation extraneous offense. The prosecutor explained that Appellant was arrested for burglary of a habitation but he pled guilty to burglary of a building pursuant to a plea bargain. The prosecutor also told the court that Detective Fitzgerald had already testified he had found Hernandez's passport and checkbook on Appellant's person. Finally, the prosecutor advised that the State intended to introduce the burglary of a building judgment related to this offense. The trial court overruled Appellant's objection to lack of notice.

Hernandez testified that she lived in Krum, Texas which is located in Denton County. In September 2008, she went out of town for three days and when she returned her home was in

"shambles." Someone had broken into her home and had gone through everything, including each shelf and drawer, and even her underwear drawer. The perpetrator had eaten food from her freezer and pantry and had thrown balls from a container into the yard. Many items were taken, including her checkbook and passport, but those two items were later returned to her. Detective Fitzgerald testified during the punishment phase that he arrested Appellant on October 7, 2008 on a burglary warrant and recovered stolen property from him, namely, a checkbook and a passport which belonged to Gloria Hernandez.

At the beginning of the punishment phase, the State introduced several judgments, including the judgment from cause number F-2008-2558-A, styled The State of Texas v. Todd McMaster, for the offense of burglary of a building, committed on September 16, 2008 in Denton County, Texas. Appellant's attorney stated that he had previously reviewed the judgments and had no objection to their admission. The judgment for this conviction recites that Appellant was convicted of burglary of a habitation, but the word "habitation" is crossed out, and the word "building" is inserted in its place.

Defense counsel indicated during the discussions outside of the jury's presence that he understood Hernandez was the complainant in the burglary of a building conviction. The evidence showed that the burglary of a building conviction resulted from Appellant's arrest for the burglary of Hernandez's home. Based on the record before us, we find no abuse of discretion in the trial court's ruling that the State gave Appellant reasonable notice of its intent to introduce evidence related to this conviction. Issue Three is overruled.

## VICTIM IMPACT TESTIMONY

In Issue Four, Appellant maintains that the trial court erred by admitting victim impact testimony of Gloria Hernandez that the burglary of her home was "horrible" and made her feel

like she had been "raped." The State responds that Appellant failed to preserve this issue by a timely and specific objection. We agree.

As a prerequisite to presenting an issue for appellate review, the record must show that the party presented the complaint to the trial court by a timely and specific request, objection, or motion. *See* TEX.R.APP.P. 33.1. Further, the argument raised on appeal must comport with the objections made in the trial court. *Gallo v. State*, 239 S.W.3d 757, 768 (Tex.Crim.App. 2007); *see Clark v. State*, 365 S.W.3d 333, 339-40 (Tex.Crim.App. 2012)(explaining rationale for contemporaneous-objection rule and requirement that complaint on appeal comport with objection at trial). Appellant objected to Hernandez's testimony based on the lack of written notice of the State's intent to introduce the extraneous offense evidence (Issue Three), but he did not object during trial on the ground it was improper victim impact evidence. Appellant raised the issue in his motion for new trial, but that objection was untimely. *See* TEX.R.APP.P. 33.1. Accordingly, we overrule Issue Four.

## JURY MISCONDUCT

In Issue Five, Appellant contends that the trial court erred by overruling his motion for new trial because some of the jurors were intimidated by other jurors and felt pressured to decide the case within the trial court's timetable. Appellant's motion alleged generally that the verdict was the result of or influenced by jury misconduct. At the hearing, Appellant's trial attorney testified that he had spoken with one of the jurors, Donna Lumsden, after the trial. The trial court sustained the State's objections to any testimony about Lumsden's statements to trial counsel. Appellate counsel for Appellant stated that she and an investigator had been attempting to contact Lumsden but she had not responded to their efforts. She thought Lumsden would testify that she felt pressured by the male jurors when deciding punishment and Lumsden also

- 10 -

felt pressured to make a decision on punishment because she had an awards banquet to attend that evening.

A trial court's denial of a defendant's motion for new trial is reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001). In criminal cases, a movant for a new trial based on jury misconduct must prove that (1) misconduct occurred and (2) the misconduct resulted in harm to the movant. *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App. 1981). It is Appellant's burden to establish juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex.Crim.App. 2000). Appellant did not offer any competent evidence in support of his argument that juror misconduct occurred in that he did not bring forward Lumsden's testimony. Further, counsel's statement that she believed the juror would have testified that the male jurors pressured her and the juror felt pressured to make a decision on punishment because the juror had an event to attend later that day is not admissible evidence under Tex.R.Evid. 606(b). That rule states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Alleged coercive activity in the jury room during deliberations is not proof of an impermissible "outside influence" for purposes of showing jury misconduct pursuant to rule 606(b). *See Romero v. State*, 396 S.W.3d 136, 151 (Tex.App.--Houston [14th Dist.] 2013, pet. ref'd), *citing Franks v. State*, 90 S.W.3d 771, 800 (Tex.App.--Fort Worth 2002, no pet.)(refusing to consider juror's affidavit that she was coerced into voting guilty and finally just gave up and changed her

vote because the other jurors told her she was being unreasonable and was crazy) *and Hart v. State*, 15 S.W.3d 117, 121-22, 124 (Tex.App.--Texarkana 2000, pet. ref'd)(affirming trial court's refusal to allow juror to testify at hearing based on Rule 606(b) where juror contended he had been coerced into voting guilty by the other jurors). Juror Lumsden's alleged statements concern the jury's deliberations and her own mental processes and do not show that an outside influence was improperly brought to bear on any juror. Consequently, the statements are inadmissible under Rule 606(b). *See Franks*, 90 S.W.3d at 800. The trial court did not abuse its discretion by denying the motion for new trial. We overrule Issue Five and affirm the judgment of the trial court.

August 21, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)